## Commonwealth *vs.* John J. DeBella.

Plymouth. September 9, 2004. - October 14, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Statute,* Construction. *Sex Offender. Practice, Civil,* Sex offender.

This court concluded that although the statutory language of G. L. c. 123A, § 14 (*a*), requires that a trial be held within sixty days of the district attorney's petition to the court for a trial to commit a prisoner as a sexually dangerous person, in the peculiar circumstances of this case, where there was uncontradicted evidence that the defendant acquiesced in the delay, the Commonwealth had shown "good cause" for exceeding the sixty-day limit. [687-691]

Civil action commenced in the Superior Court Department on August 1, 2000.

Following an order of commitment issued by *Raymond J. Brassard,* J., motions to dismiss and for reconsideration were heard by *Ralph D. Gants,* J., and the case was heard by *Charles J. Hely,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Jane Larmon White,* Committee for Public Counsel Services, for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

*John G. Swomley, Eric Tennen & Andrew Good,* for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

Cowin, J. We granted the defendant's application for direct appellate review in order to decide whether the provision of G. L. c. 123A, § 14 (*a*), requiring that a trial be held within sixty days of the district attorney's petition to the court for a trial to commit a prisoner as a sexually dangerous person, is to be interpreted as an absolute time limitation, requiring dismissal

of the case if the trial is not held or formally continued for good cause within that period. General Laws c. 123A, § 14 (*a*), states in pertinent part: "The district attorney or the attorney general at the request of the district attorney may petition the court for a trial which shall be by jury unless affirmatively waived by the person named in the petition. Such petition shall be made within 14 days of the filing of the report of the two qualified examiners. If such petition is timely filed within the allowed time, the court shall notify the person named in the petition and his attorney, the district attorney and the attorney general that a trial by jury will be held within 60 days to determine whether such person is a sexually dangerous person. The trial may be continued upon motion of either party for good cause shown or by the court on its own motion if the interests of justice so require, unless the person named in the petition will be substantially prejudiced thereby."

1. *Facts.* The facts underlying this appeal are not in dispute. The defendant was convicted of rape in 1984. The Commonwealth received notice on April 12, 2000, that the defendant would be released from his sentence on October 7, 2000. On August 1, 2000, the Commonwealth filed a petition for commitment of DeBella as a sexually dangerous person pursuant to G. L. c. 123A, § 12 (*b*).[1] Pursuant to G. L. c. 123A, § 12 (*e*), the Superior Court allowed the Commonwealth's motion for temporary detention on September 12, 2000.[2] On October 10 and 11, 2000, a Superior Court judge held an adversary hearing

---

[1] The text of G. L. c. 123A, § 12 (*b*), reads:

"When the district attorney or the attorney general determines that the prisoner or youth in the custody of the department of youth services is likely to be a sexually dangerous person as defined in section 1, the district attorney or the attorney general at the request of the district attorney may file a petition alleging that the prisoner or youth is a sexually dangerous person and stating sufficient facts to support such allegation in the superior court where the prisoner or youth is committed or in the superior court of the county where the sexual offense occurred."

[2] In pertinent part, G. L. c. 123A, § 12 (*e*), states:

"If the person named in the petition is scheduled to be released from jail, house of correction, prison or a facility of the department of

to determine whether probable cause existed to believe the defendant was a sexually dangerous person, as required by G. L. c. 123A, § 12 (*c*).[3] At the conclusion of the hearing, the judge determined that there was probable cause to find that the defendant was a sexually dangerous person, and ordered him committed to the treatment center for the sixty-day evaluation period mandated by G. L. c. 123A, § 13 (*a*).[4] Reports of two qualified examiners were filed on November 24, 2000, and on December 4, 2000, the district attorney petitioned the Superior Court for a trial to commit the defendant pursuant to § 14 (*a*).

The sixty-day period for holding the trial expired on February 2, 2001, and there is no record of a motion to continue the trial beyond that date. The only other entries on the docket during this period were the Commonwealth's motion for discovery, filed on March 2, 2001, and defendant's motion, filed on April 6, 2001, to dismiss the case for exceeding the statutory time limit of § 14 (*a*).

The Commonwealth has presented unrebutted evidence, in the form of an affidavit of the assistant district attorney handling the case, that the Commonwealth "spoke to [defense] counsel

youth services at any time prior to the court's probable cause determination, the court, upon a sufficient showing based on the evidence before the court at that time, may temporarily commit such person to the treatment center pending disposition of the petition."

[3]General Laws c. 123A, § 12 (*c*), states:

"Upon the filing of a petition under this section, the court in which the petition was filed shall determine whether probable cause exists to believe that the person named in the petition is a sexually dangerous person. Such person shall be provided with notice of, and an opportunity to appear in person at, a hearing to contest probable cause."

[4]General Laws c. 123A, § 13 (*a*), states:

"If the court is satisfied that probable cause exists to believe that the person named in the petition is a sexually dangerous person, the prisoner or youth shall be committed to the treatment center for a period not exceeding 60 days for the purpose of examination and diagnosis under the supervision of two qualified examiners who shall, no later than 15 days prior to the expiration of said period, file with the court a written report of the examination and diagnosis and their recommendation of the disposition of the person named in the petition."

regarding setting a date for discovery motions and pretrial conference [and] a trial date." The Commonwealth believed that defense counsel had "limited . . . availability" to appear in court during December, 2000, and January, 2001. Defense counsel asked the assistant district attorney to put the case on the list for a status hearing on February 28, 2001, a date beyond the sixty-day time frame of § 14 (*a*), which the assistant district attorney apparently did. The affidavit also states that defense counsel did not appear in court at the status hearing on February 28, 2001, and could not be located. On March 2, 2001, the Commonwealth sent a letter to defense counsel seeking his participation in scheduling a "new date." The Commonwealth followed up by contacting defense counsel on March 15, 2001, and the attorney stated that he would call back "with a date" but "would probably be" unavailable until "the week of March 26, 2001." The next action by defense counsel was the filing of a motion to dismiss on April 6, 2001. At the hearing on the motion to dismiss, defense counsel did not dispute any of the averments of the assistant district attorney and nothing in the record indicates that the defendant now contests any of these statements.

On May 3, 2001, a Superior Court judge denied the defendant's motion to dismiss, continuing the matter for the setting of a trial date. On May 14, 2001, the defendant filed his first motion for funds for a defense expert's examination. He filed a second motion for funds on June 6, 2001. Both motions were allowed. On January 31, 2002, the defendant filed a motion for reconsideration of the motion to dismiss, which was denied on February 14, 2002. The defendant waived his right to a trial by jury; a judge found the defendant to be a sexually dangerous person as defined in G. L. c. 123A; and he was committed for treatment under G. L. c. 123A, § 14 (*d*).[5] The denials of the

---

[5]General Laws c. 123A, § 14 (*d*), provides in pertinent part:

"If after the trial, the jury finds unanimously and beyond a reasonable doubt that the person named in the petition is a sexually dangerous person, such person shall be committed to the treatment center or, if such person is a youth who has been adjudicated as a delinquent, to the department of youth services until he reaches his twenty-first birthday,

motion to dismiss and the motion for reconsideration form the basis of the appeal.[6]

2. *Discussion.* In interpreting the requirements of § 14 (*a*), we look first to the language of the statute. "[S]tatutory language is the principal source of insight into legislative purpose." *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 392 Mass. 407, 415 (1984), quoting *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984). The words of a statute are to be given their ordinary and natural meanings. *Bronstein* v. *Prudential Ins. Co.*, *supra*, citing *Hashimi* v. *Kalil*, 388 Mass. 607, 610 (1983). When the ordinary meanings of words yield "a workable and logical result, there is no need to resort to extrinsic aids in interpreting the statute." *Hashimi* v. *Kalil*, *supra.*

General Laws c. 123A, § 14 (*a*), requires that, if a petition for trial is filed, "the court shall notify the person named in the petition and his attorney, the district attorney and the attorney general that a trial by jury will be held within 60 days to determine whether such person is a sexually dangerous person." Although articulated as a requirement of notice to the parties, the language of the statute leaves no doubt as to the Legislature's intent that such trials commence within the sixty-day time frame.

We construe the provision "will be held within 60 days" as requiring that trial be commenced, albeit not necessarily completed, within that period. The phrase could be interpreted as requiring that trial must begin and end within this time, reflecting the Legislature's concern with the defendant's liberty interest. Given the innumerable variables that influence the length of a trial, we think it unlikely that the Legislature intended to impose a strict requirement on when a trial must end. Therefore, we conclude that § 14 (*a*) requires that trial be begun within sixty days of the filing of the petition for trial.

---

and then to the treatment center for an indeterminate period of a minimum of one day and a maximum of such person's natural life until discharged pursuant to the provisions of section 9."

[6]The defendant has not contested the merits of the Superior Court's finding that he is a sexually dangerous person under G. L. c. 123A.

However, the statute also contains explicit exceptions: "[t]he trial may be continued upon motion of either party for good cause shown or by the court on its own motion if the interests of justice so require, unless the person named in the petition will be substantially prejudiced thereby." These exceptions to the statutory sixty-day requirement must be construed strictly as they are exceptions to a general provision. See *Woods* v. *Executive Office of Communities & Dev.*, 411 Mass. 599, 604-605 (1992), quoting *Opinion of the Justices*, 254 Mass. 617, 620 (1926) (when general provision of statute is followed by proviso or exception, exception is to be interpreted narrowly as carving out specific area in which general provision does not apply). Close adherence to the language of a statute and its express exclusions is even more important where a defendant's freedom is involved and there are due process considerations. "While commitment proceedings under c. 123A are civil proceedings, the potential deprivation of liberty to those persons subjected to these proceedings 'mandates that due process protections apply.' " *Commonwealth* v. *Bruno*, 432 Mass. 489, 502 (2000), quoting *Commonwealth* v. *Travis*, 372 Mass. 238, 250 (1977).

Although the exceptions to the time limit in § 14 (*a*) must be strictly construed, those exceptions permit more flexibility than do the time requirements of other civil commitment provisions. General Laws c. 123, § 7 (*c*), states that hearings on petitions for commitment to a mental health facility of certain persons "shall be commenced within 14 days of the filing of the petition, unless a delay is requested by the person or his counsel." This provision permits delay in more limited circumstances (only when the delay is requested by the person or his counsel) than does § 14 (*a*). See *Hashimi* v. *Kalil, supra* at 609-610. The *Hashimi* case, which considered the language of G. L. c. 123, § 7 (*c*), thus does not control here.

Similarly, the defendant's contention that our ruling in *Commonwealth* v. *Kennedy*, 435 Mass. 527 (2001), dictates the outcome of the present case is incorrect. The *Kennedy* case interpreted the schedule set forth in G. L. c. 123A, § 13 (*a*), which states that, once the court has made a finding of probable cause that a prisoner is a sexually dangerous person, "the prisoner or youth shall be committed to the treatment center for

a period not exceeding 60 days for the purpose of examination and diagnosis under the supervision of two qualified examiners who shall, no later than 15 days prior to the expiration of said period, file with the court a written report of the examination and diagnosis." That case concluded that a violation of the sixty-day time limit for evaluation required dismissal when the defendant had been in "temporary" commitment for more than fifteen months. *Id.* at 528, 530-531. However, § 13 (*a*) makes no allowance for relaxation of its time periods. Thus, it would be inappropriate to import the constraints of § 13 (*a*), which allows no extension of its sixty-day limit, into § 14 (*a*).[7]

In view of the language of G. L. c. 123A, § 14 (*a*), and in light of the significance of an individual's freedom, the Commonwealth must ensure that trial is commenced within sixty days[8] unless the judge makes a finding, based on supporting evidence, that there is good cause to continue the trial or that it is otherwise in the interests of justice to do so. Any request to continue the case beyond the sixty-day period must appear on the record, supported by "good cause," with record made of the judicial action taken, and the reasons therefor. If the court determines on its own motion that the interests of justice require a continuance, the record must so reflect, again with adequate findings. The findings must not simply repeat the wording of the statute; they must reflect the specific grounds presented to the judge. Any continuance must take into consideration prejudice to the person named in the petition. Our holding that findings with respect to continuances must be on the record is not an additional demand beyond the language of the statute, but merely an affirmation of the requirements of § 14 (*a*).

---

[7]Nevertheless, even in the *Kennedy* case (which involved an extended period of delay), the court left open whether dismissal would be warranted in all circumstances. "We thus need not consider whether lesser violations of the deadlines in G. L. c. 123A may result in some lesser sanction." *Commonwealth v. Kennedy*, 435 Mass. 527, 530 n.3 (2001).

[8]We recognize that § 14 (*a*) requires the court to send notice to the involved parties that a trial will be held within sixty days, while generally "[t]he primary responsibility for setting a date for trial lies with the district attorney." *Barry* v. *Commonwealth*, 390 Mass. 285, 296 n.13 (1983). We do not attempt to dictate a procedure for implementing the statutory requirements, but leave it to the offices of the respective district attorneys and the Superior Court to institute procedures to assure that these deadlines are met. The Superior Court may wish to consider adoption of a standing order on the subject.

The concept in § 14 (*a*) that certain procedures must occur within a particular time frame unless delayed for good cause or in the interests of justice, is a familiar one. We have dealt in the past with similar requirements. Rule 36 (b) (2) (F) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 909 (1979), allows continuances of criminal trials if a judge makes findings that the interests of justice outweigh the public interest in a speedy trial. This serves the goals of letting parties protect themselves from the rigors of the rule while encouraging cases to be tried swiftly. See *Barry* v. *Commonwealth*, 390 Mass. 285, 297-298 (1983).[9] The same can be said of § 14 (*a*). The court and the parties have applied the provisions of rule 36 for many years now, and should have little difficulty dealing with similar considerations here.

In the peculiar circumstances of this case, as the judge found, where there is uncontradicted evidence that the defendant acquiesced in the delay, the Commonwealth has shown "good cause" for exceeding the sixty-day limit. The Commonwealth communicated with defense counsel about setting a trial date and defense counsel requested that the case be put "on the first session [not the trial] list" for a date beyond the sixty-day limit. Defense counsel then failed to appear on the status date he had requested, and later sought another delay of the status hearing until late March, almost two months beyond the end of the sixty-day period. Finally, counsel, despite the impoverishment of his client, did not file his two motions for funds to pay for necessary expert testimony until after losing the motion to dismiss. This timing indicates that counsel was not prepared to go to trial within the sixty-day period. In contrast, nothing in the record suggests that the Commonwealth contributed to the delay of the trial. Furthermore, there has been no showing of prejudice to the defendant, and the defendant makes no such

---

[9] We have interpreted other speedy trial provisions similarly. See *Commonwealth* v. *Whooley*, 419 Mass. 421, 423-424 (1995) (no automatic dismissal for exceeding time limit for trial of probation arrestee under G. L. c. 279, § 3); *Commonwealth* v. *Ludwig*, 370 Mass. 31, 34 n. 1 (1976) (exceeding statutory time limit for adjournment of trial in G. L. c. 276, § 35, does not lead to automatic dismissal); *Commonwealth* v. *Davis*, 367 Mass. 422, 423-424 (1975) (compensation for delay of trial under G. L. c. 277, § 73, not allowed when delay benefited defendant).

claim. Thus, there is nothing to suggest that the delay at issue here "substantially prejudiced" the defendant, or that any prejudice would have prevented the allowance of a continuance. See § 14 (*a*).

We do not pass on whether a continuance should have been granted had the scheduling of this case proceeded in a more formal manner, i.e., by a defense motion for a continuance beyond the sixty days due to counsel's unavailability. The purpose of the statute is to have cases brought to trial rapidly, but not to deny justice in the interest of expediency. While obviously the focus of the statute is on the defendant's right to have his status adjudicated as rapidly as possible, there is also a public interest in having these proceedings terminate as quickly as possible. Thus, we do not endorse the granting of continuances merely for the convenience of counsel. However, it would be unfair, on the facts here, to attribute the delay to the Commonwealth, and § 14 (*a*) does not require a dismissal of the petition on this record. The order denying the motion to dismiss is affirmed as is the motion denying reconsideration.

*So ordered.*