Garsh, J.
The respondent, Joseph Gross, moves for summary judgment of dismissal on the grounds that the Commonwealth did not timely file a petition for trial as required by G.L.c. 123A, §14(a). For the reasons stated below, the respondent’s motion to dismiss is allowed.
BACKGROUND
The following material facts are not in dispute.
On July 16, 2002, the Commonwealth filed a Petition for Commitment of Sexually Dangerous Person and Temporary Detention Pending Hearing. In addition to seeking a hearing to determine whether there is probable cause to believe that the respondent is a sexually dangerous person, the petition sought “[t]rial by jury on the merits.”
A judge of this court thereafter held a probable cause hearing, concluded that there was probable cause to believe that the respondent was a sexually dangerous person and, on August 20, 2002, ordered the respondent committed to the treatment center for a period not to exceed sixty days for the purpose of examination and diagnosis under the supervision of two qualified examiners.
Forty-five days iater, on October 4, 2002, the reports of the two qualified examiners were filed with the Clerk.
At no point thereafter did the Commonwealth petition the court for a trial. Notwithstanding its failure to do so, the court scheduled a trial.[1]
On November 13, 2002, the respondent moved to dismiss the action on the grounds that the Commonwealth had not timely filed a petition for trial as required by G.L.c. 123A, § 14(a). The motion to dismiss was denied, without a hearing, on November 15, 2002 by a different judge of this court. The court reasoned that because the petition that had initiated the action sought temporary detention, a probable cause hearing, and a trial on the merits, “the claim for trial was made prior to the date which was 14 days subsequent to the filing of the report of the qualified examiner as required by G.L.c. 123A, Sec. 14(a).”[2] The respondent’s request for interlocutory review of the ruling denying his motion to dismiss was denied.
The respondent remains temporarily committed to the treatment center awaiting trial. The instant motion was filed on February 11, 2005. The Commonwealth filed its opposition on February 23, 2005. A hearing was held on February 28, 2005.
The respondent’s prison sentence expired on July 18, 2002.
DISCUSSION
The fact that another judge denied the respondent’s motion to dismiss does not preclude this court from revisiting the issue. King v. Globe Newspaper Co., 400 Mass. 705, 707-08 (1987) (judge properly considered and then allowed the defendants’ motion for summary judgment after another judge in the same court had denied it). See also Dolan v. Von Zweck, 19 Mass.App.Ct. 1032, 1033 (1985). “Though there is no duty to reconsider a case, an issue, or a question of fact or law, once decided, the power to do so remains in the court until final judgment . . .” Peterson v. Hopson, 306 Mass. 597, 601 (1940).
Compelling reasons exist to take a fresh look at the issues raised. The respondent’s prison sentence has long since expired, yet he is not free to re-enter society. Substantial liberty interests are at stake. “(C]onfinement without legal justification is never innocuous.” Commonwealth v. Kennedy, 435 Mass. 527, 530 (2001). After a finding of probable cause, a judge has no discretion with respect to whether the respondent will be committed. The statutory scheme requires that the respondent be confined in a secure facility until the conclusion of his trial. Commonwealth v. Knapp, 441 Mass. 157, 161 (2004). A judge may not release a respondent pending trial on probationary conditions once there has been a finding of probable cause. Id. at 169. The significance of an individual’s freedom, which is at stake here, overcomes the court’s general reluctance not to entertain a motion on which another judge has previously ruled.[3] This court also has the benefit of several appellate decisions construing chapter 123A that were rendered after the November 15, 2002 rul *98 ing. In addition, the first ruling was made without the benefit of any oral argument and before the Commonwealth filed a memorandum of law in opposition to the motion.
“General Laws 123A sets forth strict procedures that courts and the Commonwealth must follow with regard to the civil commitment of sexually dangerous persons.” Id. at 159. If the district attorney or attorney general determines that a prisoner about to be released is likely to be a sexually dangerous person, as that term is defined in the statute, “the district attorney or attorney general may file a petition alleging that the prisoner ... is a sexually dangerous person and stating sufficient facts to support such allegation ...” G.L.c. 123A, § 12(b). Nothing in Section 12(b) provides that the district attorney or attorney general may petition the court for a trial at that stage. The filing of a 12(b) petition does not, in and of itself, give the Commonwealth any right to proceed to trial. Rather, the statutory scheme conditions a petition’s progress on the Commonwealth’s ability to provide, with increasing degrees of rigor, evidence that the respondent is sexually dangerous. Commonwealth v. Dube, 59 Mass.App.Ct. 476, 488 (2003).
Once a Section 12(b) petition is filed, the court must then determine whether probable cause exists to believe that the person named in the petition is a sexually dangerous person. G.L.c. 123A, §12(c). If the respondent is scheduled to be released prior to the court’s probable cause determination, the court may temporarily commit such person to the treatment center pending disposition of the petition. G.L.c. 123A, §12(b).
If the court finds probable cause to believe the person named in the petition is a sexually dangerous person, the prisoner “shall be committed to the treatment center for a period not exceeding 60 days for the purpose of examination and diagnosis under the supervision of two qualified examiners who shall, no later than 15 days prior to the expiration of said period, file with the court a written report of the examination and diagnosis and their recommendation of the disposition of the person named in the petition.” G.L.c. 123A, §13(a). “There can be no question that qualified examiners are central to the statutory scheme designed to evaluate the likelihood of a sex offender to reoffend.” Commonwealth v. Bradway, 62 Mass.App.Ct. 280, 283-84 (2004). Bearing in mind the difficulty and uncertainty of predicting future dangerousness, “the Legislature took particular care in G.L.c. 123A to define the qualifications and involvement of the qualified examiners to address these concerns.’’[4] Id at 288. The statutory scheme contemplates that the district attorney or attorney general will actually examine those reports in order that any decision to proceed further be an informed one. Cf. Commonwealth v. Gagnon, 439 Mass. 826, 831 (2003) (where the filing of the qualified examiners’ report is slightly late, the party adversely affected is the Commonwealth which “must expedite its decision to seek trial and submit its petition in order to meet that requirement prior to the expiration of the sixty-day detention”).
General Laws c. 123A, §14(a) permits the district attorney or attorney general to petition for trial. It provides, in part, that “(s]uch petition shall be made within 14 days of the filing of the report of the two qualified examiners. If such petition is timely filed within the allowed time, the court shall notify the person named in the petition and his attorney, the district attorney and the attorney general that a trial by jury will be held within 60 days to determine whether such a person is a sexually dangerous person.” There is no exception to the deadline for filing the petition for trial, unlike the deadline contained in Section 14(a) pertaining to the time frame in which the trial is to commence.[5] The lack of any exception to the deadline for filing the petition for trial requires immediate release of a respondent on the sixtieth day following a Section 13(a) commitment if the Commonwealth decides not to proceed further. Section 13(a) “makes no allowance for relaxation of its time periods.” Commonwealth v. DeBella, 442 Mass. 683, 689 (2004).
The Commonwealth contends that the request for trial contained in its Section 12(b) petition fulfills its obligation under Section 14(a) because the sole purpose of the petition for trial is to provide notice to the respondent and it matters not whether that notice is given before the filing of the qualified examiners’ reports or within fourteen days afterwards. Only by disregarding the statute’s plain and unambiguous language and scheme could this court deem a request inserted in a petition filed approximately three months before the qualified examiners’ reports to be a petition for trial that has been filed “within” fourteen days of the filing of the report of the two qualified examiners as required by the statute.
Interpretation of Section 14(a) must begin with the language chosen by the Legislature. DeBella, 442 Mass, at 687 (“[i]n interpreting the requirements of § 14(a), we look first to the language of the statute”). The words of the statute are to be given their ordinary and natural meanings. Id.
The word “shall” means that the Commonwealth’s deadline for filing its petition for trial is a mandatory one. E.g., Gagnon, 439 Mass, at 830 (construing the word "shall” in § 13(a) as indicating that the action is mandatory). The mandatory nature of the filing deadline is reinforced by the Legislature’s use of the word “if’ in the sentence that immediately follows the filing deadline. Only “if’ the petition is “timely filed within the allowed time” is a trial to be scheduled. The court has no authority to schedule a trial if the Commonwealth has not timely requested one.
“We usually determine the ‘plain and ordinary meaning’ of a term by its dictionary definition.” Town of Boylston v. Commissioner of Revenue, 434 Mass. *99 398, 405 (2001). The usual and accepted meaning of the preposition “within” is “inside the limits or extent of in time or distance” or “inside the fixed limits of; not beyond.” The American Heritage Dictionary of the English Language 2051 (3rd ed. 1992). See also DeBella, 442 Mass, at 687 (the phrase “will be held within 60 days” in § 14(a) means that trial must begin, but not necessarily end, inside that period). The ordinaiy meaning of the preposition “of’ is “derived or coming from; originating at or from.” The American Heritage Dictionary of the English Language at 1254. Accordingly, the time during which the district attorney or attorney general may file its petition for trial, if any, originates with the filing of the qualified examiners’ reports, and the filing must take place inside the statutorily fixed limits of the sixty-day period of commitment following the finding of probable cause.[6]
The Commonwealth has pointed to no contrary legislative intent that would indicate that using the plain and ordinaiy meaning of the words used by the drafters is not warranted. Town ofBoylston, 434 Mass, at 405 (“[a] general principle of statutoiy construction provides that a term should be given its plain and ordinaiy meaning, unless a contrary legislative intent is demonstrated”). The ordinaiy meaning of the words “within” and “of’ yield a workable and logical result. The Commonwealth’s construction of the statute yields an unworkable and absurd result.
If a request for a trial in the Commonwealth’s Section 12(b) petition were to satisfy the requirements of Section 14(a), then the trial court must assume that the district attorney or attorney general filing such a Section 12(b) petition irrationally had determined to proceed to trial whatever the qualified examiners might conclude and however persuasive and compelling their reasons for determining a person not to be sexually dangerous might be. Moreover, under the Commonwealth’s construction of Section 14(a) as no more than a notice provision that can be fulfilled by requesting a trial in the Section 12(b) petition, the respondent will not be released on the sixtieth day of the Section 13(a) commitment unless the Commonwealth, following the filing of qualified examiners’ reports, has advised the court that it does not want a trial. This stands on its head the statutoiy scheme requiring a respondent to be released on the sixtieth day if the Commonwealth has not filed a petition for trial after the filing of the qualified examiners’ report.
The Commonwealth’s interpretation of the statute would also make it impossible to comply with the requirement in Section 14(a) that a trial be held within sixty days of the filing of the petition. The statute must be read as a cohesive whole. Knapp, 441 Mass, at 161. In DeBella, the Court concluded that Section 14(a) “requires that trial be begun within sixty days of the filing of the petition for trial.” 442 Mass, at 687. If a request for trial in a Section 12(b) petition fulfills the Section 14(a) requirement, then trial would have to commence within sixty days of the filing of the Section 12(b) petition. That obviously cannot happen. In the instant case, for example, the Section 12(b) petition was filed on July 16, 2002. Therefore, if the request for trial contained in that petition is deemed to be a Section 14(a) petition for a trial, a trial was required to have commenced by September 16, 2002, several weeks before the reports of the qualified examiners were even required to be filed. None of the statutoiy exceptions to the requirement that trial commence within sixty days of the filing of the Section 14(a) petition apply. The Commonwealth suggests that the logistical dilemma created by its reading of the statute can be cured by requiring the trial to begin within sixty days of the filing of the qualified examiners’ reports whenever the Commonwealth includes its petition for trial in the initial petition. The problem with the Commonwealth’s solution is that it requires judicial rewriting of an otherwise clear and workable statute.
In sum, justice, common sense, and the intention of the Legislature as expressed in the language it employed compel the conclusion that the Commonwealth did not a petition for trial within fourteen days of the filing of the reports of the two qualified examiners or within sixty days of the period of commitment ordered under Section 13(a) and that, accordingly, no trial may be held. The respondent is entitled to be released from the treatment center.
A stay pending appeal is not warranted in light of the significant period of time that the respondent has been detained beyond the sixty-day period prescribed by Section 13(a) and considering the likelihood of the Commonwealth’s success on appeal. The Commonwealth’s oral motion to stay the judgment of dismissal for forty-eight hours is allowed.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to dismiss be and hereby is ALLOWED and that judgment enter dismissing this action. It is further ORDERED that Joseph Gross be released from the treatment center and that he comply with all requirements of the Sex Offender Registration Act. This ORDER becomes effective at 4 p.m. on March 2, 2005.

The docket reflects six trial dates: on the first trial date, the case was not reached by the court; on the next three trial dates, the matter was continued upon the joint request of the parties; trial next was not held at the request of the respondent; the defendant has again sought a continuation of the trial date. This court did not rule on the motion to continue in light of the allowance of the defendant’s motion to dismiss.

The full text of the court’s order is as follows:
As appears from the clerk’s minutes, a copy of which is attached, Probable Cause was found on August 16, 2002, and the order thereon issued on August 20, 2002. On August 22, 2002, the matter was scheduled for October 10, 2002, for hearing on status. When the matter was called, defense counsel was not present. This justice was required to give specific instruction to the clerk to notify *100 defense counsel to be present. The delay from October 10, 2002 i[s] attributable to defense counsel.
The petition, as filed, sought, inter alia, 1) temporary detention, 2) a probable cause hearing and 3) trial on the merits. Thus, the claim for trial was made prior to the date which was 14 days subsequent to the filing of the report of the qualified examiner as required by G.L.c. 123A, Sec. 14(a).
Also, pursuant to the same section, the defendant is ordered detained until the completion of the trial.
The Clerk’s Minutes do not, in fact, state that there was to be a “hearing” on status on October 10, 2002. The Minutes for August 22, 2002 simply state “10/10/02 st.” Counsel for the respondent represented at this hearing that he did not receive notice of any status hearing or status conference for that date. Consistent with that representation, the case file contains no written copy of any notice requiring counsel to appear for any matter on October 10, 2002 and, unlike the very next entry, the Minutes for August 22, 2002 do not reflect that oral notice was given. However, whether counsel was required to appear before the court on October 10, 2002 and did not' is a red herring. As the Commonwealth concedes, even if counsel failed without justification to appear for a hearing on status on October 10, 2002, that failure is not relevant to the legal issue raised by the defendant’s motion to dismiss. Any failure of respondent’s counsel to appear at a hearing on status on October 10, 2002 was in no way responsible for, nor did it justify, the Commonwealth’s failure to have filed its Section 14(a) petition within fourteen days of the filing of the reports by the qualified examiners. It does not matter whether the delay from October 20, 2002 to November 15, 2002 is attributable to counsel for the respondent. The Commonwealth did not file its Section 14(a) petition for trial on November 15, 2002 or on any date thereafter.

“The statute’s strict timetables and express recitations of respondents’ rights throughout the process .. . demonstrate the Legislature’s . . . concern for individuals’ liberty.” Commonwealth v. Knapp, 441 Mass. 157, 160 (2004).

The statute requires that each qualified examiner be “a physician who is licensed . . . [and] who is either certified in psychiatry by the American Board of Psychiatry and Neurology or eligible to be so certified, or a psychologist who is licensed . . .” G.L.c. 123A, §1. The statute also requires that the qualified examiner have “two years of experience with diagnosis or treatment of sexually aggressive offenders” and be designated by the commissioner of correction. Id.

Section 14(a) explicitly permits the trial to be continued, upon motion of either party, for good cause shown or by the court if the interests of justice so require unless the respondent will be substantially prejudiced by the delay. G.L.c. 123A, §14(a).

In Commonwealth v. Knapp, 441 Mass. 157, 158 n.3 (2004), the Court noted that “(i)nstead of petitioning for a trial within fourteen days of the filing of the qualified examiners’ report, as G.L.c. 123A, §14(a) envisions, the Commonwealth included its petition for a trial within its initial petition alleging that [the respondent] is a sexually dangerous person.” The Court did not decide whether the Commonwealth may file its § 14(a) petition concurrently with its §12(b) petition because that question had not been reserved and reported by the single justice. Id, However, in setting forth the procedures that must be followed under the statute, the Court stated that the qualified examiners must file their written report within forty-five days of the commitment following a probable cause determination “and within fourteen days thereafter (or within sixty days of the commitment. . .), the Commonwealth must then decide whether to move for trial.” Id. at 160. The Court also stated that secure confinement was mandatory “after a probable cause finding and the Commonwealth’s petition for trial. See §14(a).” Id, at 163. In discussing whether a respondent could be released from confinement pending trial, the Court stated that “[o]nce a judge has found that probable cause exists to believe that a person is sexually dangerous and the Commonwealth has petitioned for trial (as it must to set the trial process in motion), the clear intent and requirement of the statute is that the person be confined in a secure facility.” Id. In deciding whether the automatic and non-discretionary confinement described by §14(a) comported with procedural due process, the Court stated that it was considering whether such confinement “after a judge has found that probable cause exists .. . and after the Commonwealth has petitioned for trial” is narrowly tailored to further the government’s compelling interest. Id. at 164. In answering that question in the affirmative, the Court reviewed the various steps that must occur before a person is confined pending trial, namely a finding of probable cause and ”[i]n addition, the Commonwealth must have petitioned for trial after the respondent has been evaluated by at least two qualified examiners at the treatment center.” Id, at 165. See also Commonwealth v. Gagnon, 439 Mass. 826, 828 n.2 (2003) (“General Laws c. 123A, §14(a) requires the Commonwealth to file a trial petition within fourteen days after the filing of the report. Given that the report is itself forty-five days after commitment, the trial filing deadline is designed to fall within the sixty-day detention period”); Commonwealth v. Reese, 438 Mass. 519, 522 (2003) (”[f]ollowing the filing of [the qualified examiners’] report, the district attorney has fourteen days within which to petition the court for a trial on the question whether the person is sexually dangerous”); Commonwealth v. Kennedy, 435 Mass. 527, 531 n.4 (2001) (the district attorney has fourteen days “from” the filing of the qualified examiners’ report in which it may petition for trial).