**KELLER CORPORATION, d/b/a The Blind Man of America, Plaintiff–Appellant,**

v.

**David KELLEY and Accent Window Coverings of Southern Colorado, Inc., Defendants–Appellees.**

No. 07CA0580.

Colorado Court of Appeals, Div. I.

May 15, 2008.

Weeks & Luchetta, LLP, Jeffrey L. Weeks, Colorado Springs, Colorado, for Plaintiff–Appellant.

Buxman, Kwitek & Ohlsen, P.C., Mark A. Ohlsen, Pueblo, Colorado for Defendants–Appellees.

Opinion by Judge CRISWELL.*

Plaintiff, the Keller Corporation, doing business as the Blind Man of America (Franchisor), appeals the trial court's order denying its motion for preliminary injunction against defendants, David Kelley and Accent Window Coverings of Southern Colorado, Inc. We reverse and remand for further proceedings.

## I.  The Trial Court Proceedings

Franchisor is in the business of selling and installing residential and commercial window coverings through franchises located throughout Colorado.  These franchises are exclusive within specified territories, and the franchisees are permitted to make sales using Franchisor's name and procedures within these territories.

Kelley originally had entered into a franchise agreement with Franchisor for a franchise covering the Denver area.  In April 2000, however, he terminated their agreement and purchased an existing franchise in Pueblo County from the previous franchisee. As a part of their agreement, Kelley received certain physical assets, such as signage, advertising materials and brochures, and customer and vendor records.  In conjunction with his acquisition of this Pueblo County franchise, Kelley also entered into a new franchise agreement with Franchisor.

This latter agreement contained a covenant not to compete which prohibited Kelley from engaging in a similar window coverings sale and installation business within a fifty-mile radius of any of Franchisor's existing franchises within Colorado for a period of three years after termination of that agreement.  These other franchises were located in Colorado Springs, Vail, Aspen, Fort Collins, Grand Junction, and Thornton.  Additionally, this agreement prohibited the disclosure by Kelley of Franchisor's trade secrets.

Franchisor also provided Kelley with training in window blind sales and installation and in recordkeeping, including Franchisor's confidential business operations manual.  Although this manual was not placed into evidence, the testimony was that the manual contained Franchisor's trade secrets and other confidential information.  Franchisor also agreed to act in an advisory capacity to Kelley in his Pueblo operations.

Kelley's franchise agreement for Pueblo County terminated in August 2005.  He then began operating a window coverings sales and installation business in the Pueblo area through a corporation, Accent Window Coverings of Southern Colorado, Inc. (AWC).

In October 2006, Franchisor commenced this action against both Kelley and AWC, seeking preliminary and permanent injunctive relief to enforce the non-competition provisions of the franchise agreement. It also sought liquidated damages against Kelley in the amount of $1000 per week for each week that he had violated the covenant.  Finally, alleging that AWC had engaged in a civil conspiracy with Kelley to violate the agreement and that both defendants had engaged in unfair competition, Franchisor sought actual damages in an unspecified amount from AWC.

In response to this complaint, Kelley, on a pro se basis, filed an affidavit setting forth alleged facts upon which he was relying in defense against Franchisor's complaint. This affidavit was filed on behalf of "Kelley, a/k/a Accent Window Coverings of Southern Colorado, Inc." and asserted that he was the "sole owner of AWC Inc." Franchisor then moved to have a default entered against AWC, alleging that Kelley, a non-lawyer,

could not represent the corporation and that AWC had not filed any response to its complaint.

An evidentiary hearing was held upon Franchisor's request for a preliminary injunction. At that hearing, Franchisor asserted that the covenant not to compete in the pertinent agreement was authorized by section 8–2–113(2)(a) and (b), C.R.S.2007, because the franchise agreement was an agreement for the purchase and sale of a business and, also, because it was designed to protect its trade secrets. However, at the request of the trial court, its evidence focused on the nature of its trade secrets and Kelley's alleged use of those secrets. Franchisor also continued to assert that Kelley could not legitimately continue to represent AWC.

At the conclusion of this evidentiary hearing, the court first denied Franchisor's motion for default against AWC, concluding that "there is no amount in controversy." It then found, as a fact, that certain information provided by Franchisor to Kelley constituted trade secrets, but that Kelley had not made any use of that information in the business conducted by AWC. It concluded, therefore, that it was not probable that Franchisor would ultimately succeed on the merits of its claim, that it had not suffered any irreparable injury, and that the balance of the equities favored Kelley. In doing so, it made no reference to Franchisor's claim that its agreement with Kelley was one for the purchase and sale of a business within the meaning of the pertinent statute.

Franchisor appeals from this order denying its request for a preliminary injunction.

## II. The Representation of AWC

We first consider Franchisor's contention that the trial court erred in permitting Kelley to represent AWC at the preliminary injunction hearing. We conclude that that court must reconsider its order allowing such representation.

■ A corporation is an artificial entity created by law. *BQP Indus., Inc. v. State Bd. of Equalization,* 694 P.2d 337, 341 (Colo. App.1984). Thus, unlike a natural person, it generally cannot appear or act in a judicial proceeding in person, but must be represented by a licensed attorney. *Id.* However, section 13–1–127, C.R.S.2007, provides, in part, as follows:

> (2) Except as otherwise provided [as to county courts], a closely held entity may be represented before any court of record or any administrative agency by an officer of such closely held entity if:
> (a) The amount at issue in the controversy or matter before the court or agency does not exceed ten thousand dollars, exclusive of costs, interest, or statutory penalties, on and after January 1, 1991....

Here, Kelley appeared pro se at the preliminary injunction hearing, and the trial court permitted him also to represent AWC in that hearing. In its order denying the motion for preliminary injunction, the trial court determined that Kelley was permitted to represent AWC because "there is no amount in controversy."

We do not fully understand the court's ruling in this respect. While the hearing on the request for a preliminary injunction did not, itself, involve a request for monetary relief, the pertinent statute is not intended to be applied on such a piecemeal basis. That statute does not permit a closely held corporation to be represented by a lay person on a motion simply because the motion itself will not result in any monetary liability; it is, rather, the amount involved in the overall litigation that is the test under section 13–1–127(2)(a).

■ Here, it is quite clear that Franchisor was requesting liquidated damages against Kelley in an amount in excess of $10,000, but its complaint contained no specification of the amount of actual damages it was seeking against AWC. While its complaint did not seek to pierce AWC's corporate veil, it is unclear whether Franchisor asserts that AWC is jointly and severally liable with Kelley under its civil conspiracy claim for the liquidated damages it seeks.

If the amount in controversy between Franchisor and AWC is in excess of $10,000, the trial court is bound to strike Kelley's affidavit, to the extent that it may be deemed to have been filed on AWC's behalf. *See In*

*re Estate of Nagel,* 950 P.2d 693, 694 (Colo. App.1997) (a pleading filed by a non-lawyer on behalf of a corporation is a nullity and must be stricken); *Woodford Mfg. Co. v. A.O.Q., Inc.,* 772 P.2d 652 (Colo.App.1988). Unless the amount in controversy is determined to be less than $10,000, Kelley cannot represent AWC.

However, because the court's determination that there was "no amount in controversy" is clearly not supported by the record, we must remand this case to the trial court for its reconsideration of this issue. It may receive such evidence as it may determine to be appropriate for this purpose.

### III. Preliminary Injunctive Relief

■ A trial court's ruling on a motion for preliminary injunction should be reviewed with deference, and that determination will not be overturned unless it is manifestly unreasonable, arbitrary, or unfair. *State ex rel. Salazar v. Cash Now Store, Inc.,* 31 P.3d 161, 164 (Colo.2001). However, if only legal, rather than factual, questions are at issue, we review the court's preliminary injunction ruling de novo. *See id.*

■ A preliminary injunction is designed to preserve the status quo or to protect a party's rights pending the final determination of a cause. *City of Golden v. Simpson,* 83 P.3d 87, 96 (Colo.2004). Its purpose is to prevent irreparable harm prior to a decision on the merits of a case.

■ In considering a motion for a preliminary injunction, the trial court must determine whether the moving party has demonstrated (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief; (3) the lack of a plain, speedy, and adequate remedy at law; (4) no disservice to the public interest; (5) the balance of equities in favor of the injunction; and (6) the preservation by the injunction of the status quo pending a trial on the merits. *Rathke v. MacFarlane,* 648 P.2d 648, 653–54 (Colo. 1982). If each criterion is not met, injunctive relief should not be granted. *Id.* at 654.

In denying Franchisor's request for a preliminary injunction, the trial court determined that it was not probable that Franchisor would succeed on the merits and that it would not suffer any irreparable harm. Hence, it concluded that the balance of equities did not favor its issuance. In addition, the court apparently concluded that the restriction against competition within fifty miles of any franchised location was unreasonable.

However, as we note below, each of these determinations was made within the context of the court's consideration of the trade secrets provision in section 8–2–113(2)(b). It did not address the question of the applicability of section 8–2–113(2)(a), which allows a covenant not to compete in any contract for the purchase and sale of a business.

### IV. Covenants Not to Compete

At the common law, a covenant not to compete could not exist as an independent agreement, even if proper consideration were given for that covenant. Rather, it was enforceable only to the extent that it served an interest of the promisee worthy of protection; it had to be ancillary to a transaction or relationship creating such an interest. In comment (b) to Restatement (Second) of Contracts § 187 (1991), for example, this consideration is summarized as follows:

> In order for a promise to refrain from competition to be reasonable, the promisee must have an interest worthy of protection that can be balanced against the hardship on the promisor and the likely injury to the public. The restraint must, therefore, be subsidiary to an otherwise valid transaction or relationship that gives rise to such an interest. A restraint that is not so related to an otherwise valid transaction or relationship is necessarily unreasonable. The promisee's interest may arise out of his acquisition from the promisor of a business [or from an employment or partnership relationship]. This enumeration does not purport to be exhaustive, but a promise not to complete that is not ancillary to some such transaction or relationship as

these is unreasonable because it protects no legitimate interest of the promisee.

(Citations omitted.)

The provisions of section 8–2–113(2) have limited the use of a covenant not to compete to the extent that such a covenant would restrict "the right of any person to receive compensation for performance of skilled or unskilled labor for any employer." Such a right to perform labor cannot be restricted, except in certain specified instances. Among these exceptions are situations where the covenant not to compete is contained within a "contract for the purchase and sale of a business or the assets of a business," § 8–2–113(2)(a), or in a contract "for the protection of trade secrets," § 8–2–113(2)(b).

■ This statute reflects a public policy that generally does not favor covenants not to compete. *See DBA Enters., Inc. v. Findlay*, 923 P.2d 298 (Colo.App.1996). And, therefore, even if the covenant is contained within one of the authorized contracts, nevertheless, it still must be reasonable as to its territorial reach and its duration. *See Nat'l Graphics Co. v. Dilley*, 681 P.2d 546 (Colo. App.1984).

Here, Franchisor contends that the covenant not to compete in the franchise agreement falls under both of the pertinent exceptions. A review of the record demonstrates, however, that, although Franchisor requested the trial court to consider both exceptions at the preliminary injunction hearing, the court considered only the trade secret exception. Thus, the trial court did not make any findings of fact regarding the sale of business exception in its order denying Franchisor's motion for preliminary injunction.

## A. Trade Secret Exception

The trial court found that, while Kelley had been privy to Franchisor's trade secrets, there was no evidence that defendants had used or intended to use and benefit from those trade secrets. Our review of the record here shows that these findings were supported by the evidence produced at the hearing, and we cannot, therefore, reverse them.

## B. Sale of Business Exception

■ Generally, the purpose of a covenant not to compete when ancillary to the sale of a business is to protect the buyer's right to enjoy the goodwill inherent in the business purchased and to prevent the seller from soliciting the buyer's new customers. *See Nat'l Propane Corp. v. Miller*, 18 P.3d 782, 786 (Colo.App.2000). Thus, in the sale of a business context, it is the seller who often agrees not to compete with the buyer for a certain period of time within a certain area because such an agreement protects the value of the goodwill purchased by the buyer. *See McCart v. H & R Block, Inc.*, 470 N.E.2d 756, 763 (Ind.Ct.App.1984).

However, nothing within the statute itself limits its applicability only to covenants designed to protect buyers. The statute's only requirement is that it be contained in an agreement "for the purchase and sale of a business." And, so long as it is evident that the transaction creates in the seller an interest that would have been considered by the common law as one worthy of protection, there is no reason to conclude that the Colorado General Assembly intended not to continue to allow the parties to protect that interest.

In the case of the sale of a franchise, the buyer would seem clearly to have a protectable interest in not having the franchisor compete with it in its exclusive franchise territory during the period that the franchise is in existence. At the same time, however, once the franchised term ends, the franchisor may well possess an interest worthy of protection in not having the former franchisee use the knowledge, training, and experience gained from the franchisor to compete against it. In both cases, the covenant not to compete protects the goodwill of the business.

Indeed, some jurisdictions that have considered covenants not to compete contained in franchise agreements have analogized such covenants, under the common law, either to covenants not to compete in the sale of a business context or to covenants not to compete in an employment context. This distinction is important in other jurisdictions because it is recognized that, under the common law, covenants not to compete in

employment contracts are more strictly construed than covenants not to compete contained in contracts for the sale of a business. *See Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.*, 834 F.Supp. 683 (D.N.J.1993); *H & R Block, Inc. v. Lovelace*, 208 Kan. 538, 493 P.2d 205 (1972); *Boulanger v. Dunkin' Donuts Inc.*, 442 Mass. 635, 815 N.E.2d 572 (2004); *H & R Block Tax Servs., Inc. v. Circle A Enters., Inc.*, 269 Neb. 411, 693 N.W.2d 548 (2005).

These other jurisdictions recognize that the primary characteristic of a franchise is the license given to the franchisee to trade upon and exploit the franchisor's goodwill. *Jiffy Lube Int'l, Inc.*, 834 F.Supp. at 691. Stated more broadly, the franchise constitutes an elaborate agreement whereby the franchisee undertakes to conduct business or to sell a product or service in accordance with methods and procedures prescribed by the franchisor, while the franchisor undertakes to assist the franchisee through advertising, promotion, and other advisory services. *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207, 211 (1976). Thus, the foremost business interest that a covenant not to compete in a franchise agreement seeks to protect is the basic product that the franchisor has to sell, namely the goodwill created by the franchisor and its business methods. *See id.*

Similar to the repeated patronage that is inherent in the goodwill purchased by a buyer in a contract for the sale of a business, a franchisee seeks to exploit the name and service marks of the franchisor. *See McCart*, 470 N.E.2d at 763. Such service marks are a form of business assets that may be legitimately protected. Thus, similar to a covenant not to compete in a sale of a business context, a covenant not to compete in a franchise agreement seeks to enable the buyer of a franchise to enjoy the goodwill for which he or she has bargained.

Yet, a franchise agreement may also be viewed as a conveyance of the franchisor's goodwill only for the period the franchise is in existence. *See Jiffy Lube Int'l Inc.*, 834 F.Supp. at 691. Thus, when the franchise terminates, the goodwill is, "metaphysically, reconveyed to the franchisor." *Id.* A covenant not to compete against the franchisor therefore seeks to protect that goodwill. *See id.*

We note that other divisions of this court have addressed covenants not to compete in franchise agreements. In *DBA Enterprises*, for example, a division of this court concluded that a covenant not to compete in a franchise agreement which prevented the *seller* of the franchise from competing was enforceable under the sale of business exception. *See DBA Enters., Inc.*, 923 P.2d at 302–03. However, in *Gold Messenger, Inc. v. McGuay*, 937 P.2d 907, 910 (Colo.App.1997), the division declined to address whether the creation of a franchise arrangement constituted an agreement for the sale of a business, but relied upon the trade secret exception to affirm the grant of injunctive relief. Neither of these cases addressed the issue of the enforceability of a covenant that prevented the *franchisee* from competing with the franchisor after termination of the franchise.

█ Moreover, we need not decide whether an agreement establishing a franchise in a territory for the first time would constitute the sale of a "business" within the meaning of section 8–2–113(2)(a), because that is not this case. Rather, here, the franchise agreement between Franchisor and Kelley was entered into as part of the same transaction in which Kelley acquired a going business from the previous franchisees. We conclude, then, that, at least under these circumstances, the agreement between Franchisor and Kelley constituted an agreement for the purchase and sale of a business under the statute.

We also conclude that, given appropriate circumstances, such as those here, a covenant not to compete running in favor of a franchisor is an enforceable covenant under that statute.

█ As we have noted, because the trial court focused solely on the question whether the covenant was enforceable under section 8–2–113(2)(b) as one contained in a contract for the protection of trade secrets, it did not consider its enforceability under section 8–2–113(2)(a).

Further, because the trial court determined that Kelley was not using any of Fran-

chisor's trade secrets, it naturally concluded that Franchisor had little chance of success on the merits, that it would suffer no irreparable harm, and that the balance of equities favored defendants. Considering the covenant as one contained within a contract for the purchase and sale of a business, rather than one designed merely to protect trade secrets, however, might well lead to a substantially different conclusion on each of these factors.

Finally, while the trial court did not specifically find that the restriction here was unreasonable, it noted that the restriction against competing against all the franchises within the state incorporated an "enormous" area. However, because Kelley was doing business only within the Pueblo area and any injunction entered would have only an immediate effect only within that area, the court had the authority to limit the reach of its injunction to an area considered by it to be reasonable. *See Whittenberg v. Williams*, 110 Colo. 418, 421, 135 P.2d 228, 229 (1943).

Hence, because the trial court did not consider these issues, we must remand for reconsideration of the request for a preliminary injunction in the context of the covenant contained in a contract for the purchase and sale of a business.

### V. Attorney Fees

Both Franchisor and defendants have requested an award of attorney fees pursuant to the provisions therefor in the franchise agreement. We decline to award attorney fees to either party. Rather, any award of attorney fees should await the final disposition of the entire case upon remand, and the trial court should address that issue at that time.

The trial court's order denying a preliminary injunction is reversed, and the case is remanded to that court for its further consideration of the request for such relief in accordance with the views set forth in this opinion.

Judge RUSSEL and Judge MÁRQUEZ * concur.