## Commonwealth *vs.* Courtney Lynch.

No. 06-P-915.

Plymouth. May 7, 2007. - August 30, 2007.

Present: Green, Smith, & Grainger, JJ.

*Sex Offender. Constitutional Law,* Delay in commencement of prosecution, Assistance of counsel, Trial jury-waived. *Evidence,* Expert opinion, Privileged record.

General Laws c. 123A, § 14(*a*), which sets forth a sixty-day period for the trial of a petition to commit an individual for treatment as a sexually dangerous person (SDP) following a determination of probable cause, did not require a Superior Court judge to dismiss the Commonwealth's petition to have the defendant committed as an SDP, despite the fact that the trial did not begin until nearly four years after the Commonwealth had filed its petition, where the defendant either acquiesced to or caused a number of the delays; where no prejudice inured to the defendant despite the extended delay in the case; and where the record evidenced no objections by the defendant to repeated continuances. [25-28]

In a proceeding to commit the defendant for treatment as a sexually dangerous person, the examination of the defendant by a third qualified examiner, as well as that examiner's testimony at trial, did not create a substantial risk of a miscarriage of justice, where the third examiner's testimony was duplicative and cumulative of that presented by the other two examiners, and where, even without the third examiner's testimony, the judge had ample evidence to find the defendant sexually dangerous. [28-29]

A Superior Court judge presiding over proceedings to commit the defendant for treatment as a sexually dangerous person did not render the defendant's waiver of trial by jury involuntary by informing him that a unanimous verdict was required for his continuing commitment, where such unanimity was mandated by statute. [29]

In a proceeding to commit the defendant for treatment as a sexually dangerous person, no ineffective assistance of counsel arose from the defense counsel's failure to object to the defendant's examination by a qualified examiner. [29-30]

In a civil action to commit the defendant as a sexually dangerous person, there was no error in the use of certain of the defendant's psychiatric records at trial, where any privilege attaching to those records was waived. [30]

The defendant in a civil proceeding for commitment as a sexually dangerous person failed to demonstrate that he was improperly coerced to submit to an interview with a second qualified examiner. [30-31]

CIVIL ACTION commenced in the Superior Court Department on September 25, 2000.

The case was heard by *Carol S. Ball*, J.

*Edward E. Eliot*, Committee for Public Counsel Services, for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

GRAINGER, J. The defendant appeals his commitment as a sexually dangerous person pursuant to G. L. c. 123A. He asserts an abundance of errors, primary among them violations of the time periods prescribed by §§ 13(*a*) and 14(*a*) of that statute, his examination by more than the two qualified examiners he claims are authorized by § 13(*a*), and ineffective assistance of counsel. We deal with each claim in turn.

*Background.* The defendant entered a guilty plea in the Plymouth District Court to a charge of indecent assault and battery on a child under fourteen, and was sentenced to two and one-half years in the house of correction with nine months to serve.

Prior to the defendant's scheduled release, the Commonwealth filed a petition in Superior Court to have him committed for treatment as a sexually dangerous person (SDP). At the Commonwealth's request the judge ordered the production of the defendant's records from the Baird Center and the Hillcrest Education Center. There was no objection or claim of privilege by the defendant at that time.

After an evidentiary hearing, the judge found probable cause to believe the defendant was an SDP. The defendant was committed to the Massachusetts treatment center for sixty days for examination and diagnosis, pursuant to § 13(*a*) of the statute. The reports of the two assigned qualified examiners, Drs. Kiley and Murphy, were filed thirty-seven days later. G. L. c. 123A, § 13(*a*). Twelve days later, the Commonwealth filed its petition for trial. See G. L. c. 123A, § 14(*a*).

The defendant made his first request for funds on December 21, 2000, slightly more than one week after the Commonwealth filed its petition for trial. After several continuances spanning almost four months without any objection from the defendant, new counsel for the defendant entered the case on April 4, 2001.

The defendant had refused to be interviewed by Dr. Kiley,

one of the two assigned qualified examiners. In early June, 2001, the defendant notified the Commonwealth that he intended to call Dr. Kriegman as a witness and that Dr. Kriegman's opinion was based in part on an interview with the defendant. As a result, the Commonwealth moved for Dr. Kiley to interview the defendant and on June 12, 2001, the defendant was ordered to participate in an interview with Dr. Kiley, with defense counsel present if he chose.

The trial, scheduled for June 21, 2001, was continued again without any objection from the defendant. On October 16, 2001, the defendant filed a pro se motion to dismiss his counsel. On December 18, 2001, the defendant, still represented by his second counsel, filed a motion to dismiss, claiming (1) that the SDP petition violated the prohibition against ex post facto laws; (2) that he had not yet received an updated report from Dr. Kiley; and (3) that there had been a violation of his general right to a speedy trial.

Dr. Kiley's updated report was filed on December 24, 2001. The defendant's third counsel entered the case on February 27, 2002, and the motion to dismiss was withdrawn by the defendant on April 11, 2002.

On May 20, 2002, the defendant requested and was granted additional funds. After several continuances by agreement, the case was scheduled for trial on September 13, 2002. On August 22, 2002, the parties' joint motion to remand the case to the first session for rescheduling was allowed because both parties agreed the case was not in a trial posture. The defendant was still waiting for a report from an expert he consulted.

On May 7, 2003, another motion for funds by the defendant was allowed and the prior motion for funds was vacated. More funds were requested by the defendant and allowed on October 15, 2003.

Also in October, 2003, the defendant provided the Commonwealth with a report from his expert that indicated the expert's opinion that the defendant was not an SDP, based on recent interviews with the defendant. As a result, the Commonwealth requested that the other experts involved in the case be allowed to conduct updated interviews. The judge allowed the request on October 15, 2003, and ordered the defendant to "make himself

available to the experts." On the same date the judge also assigned the case to the second session for trial.

The case remained in this posture for more than nine additional months without objection by either party until late August, 2004, when it was scheduled for trial on September 30, 2004. A three-day bench trial commenced on that date. At its conclusion the defendant was found to be an SDP and committed for treatment. Other facts are recited as they become relevant to our discussion of the issues.

*Discussion.* a. *The statutory time periods.* General Laws c. 123A, § 13(*a*), requires that, if the judge finds probable cause to believe that the defendant is an SDP, the defendant may be committed for up to sixty days for evaluation by two qualified examiners. The section also provides that the examiners must submit their evaluations by the forty-fifth day of the sixty-day period. Here, the qualified examiners filed their reports thirty-seven days after the finding of probable cause. The Commonwealth filed its petition for trial twelve days thereafter. At that point, the applicable time deadlines had been met. However, the trial did not begin until nearly four years after the Commonwealth had filed its petition, after repeated continuances. We therefore must determine under what circumstances the sixty-day period, set forth in G. L. c. 123A, § 14(*a*), for commencing trial on the petition may be extended.

Section 14(*a*), added by St. 1999, c. 74, § 8, states that continuances beyond the stated sixty-day period will be allowed "for good cause shown" by either party or if the judge determines that "the interests of justice so require."[1] The Supreme Judicial Court reviewed the application of these exceptions in some detail in

---

[1] General Laws c. 123A, § 14(*a*), provides: "The district attorney or the attorney general at the request of the district attorney may petition the court for a trial which shall be by jury unless affirmatively waived by the person named in the petition. Such petition shall be made within 14 days of the filing of the report of the two qualified examiners. If such petition is timely filed within the allowed time, the court shall notify the person named in the petition and his attorney, the district attorney and the attorney general that a trial by jury will be held within 60 days to determine whether such person is a sexually dangerous person. The trial may be continued upon motion of either party for good cause shown or by the court on its own motion if the interests of justice so require, unless the person named in the petition will be substantially prejudiced thereby. The person named in the petition shall be confined to a secure facility for the duration of the trial."

*Commonwealth* v. *DeBella*, 442 Mass. 683 (2004), and noted that they "must be construed strictly as they are exceptions to a general provision." *Id.* at 688. The court pointed out that while this is especially the case where liberty interests are at stake, these "exceptions permit more flexibility than do the time requirements of other civil commitment provisions." *Ibid.* Additionally, a review of continuances under the statute must take into account whether there has been any prejudice to the defendant. *Id.* at 690-691. The Commonwealth can show good cause through uncontradicted evidence that the defendant acquiesced in a delay. *Ibid.*

With these precepts in mind we turn to the record before us. On four occasions the evidence that the defendant acquiesced in a delay is uncontradicted.[2] On yet another five occasions the defendant took actions that had the effect of prolonging the proceedings.[3] On October 16, 2001, the defendant filed a pro se motion to dismiss counsel, and he was assigned his third counsel on February 27, 2002. On December 18, 2001, the defendant asserted his right to a speedy trial by way of a motion to dismiss. On April 11, 2002, the defendant, still represented by his third counsel, withdrew that motion to dismiss for violation of his right to a speedy trial. See note 3, *supra.* This behavior is manifestly more than acquiescence; delays attributable to these motions and withdrawals were caused by the defendant. Cf. *DeBella, supra* at 690 (indicating Mass.R.Crim.P. 36[b][2][F], 378 Mass. 909 [1979], deals with similar considerations).

Moreover, we discern no prejudice to the defendant despite the extended delay in this case. To the contrary, on several occasions the defendant actively sought delays for his own benefit,

---

[2]These occasions, during which the docket shows the grant of multiple continuances with no objection or any comment from the defendant appearing in the record, are as follows: the four-month period after the Commonwealth filed its petition for trial; the continuance of trial scheduled for June 21, 2001; several back-to-back continuances between May 20, 2002, and the next scheduled trial date on September 13, 2002; and the nine-month period beginning early in 2004 until the trial was held on September 30, 2004.

[3]These are his request for funds to retain experts on December 21, 2000; his motion to dismiss his counsel in October, 2001; the withdrawal in April of 2002 of his motion to dismiss for violation of the right to a speedy trial, filed the previous December; the joint motion for remand filed in August of 2002; and several additional requests for funds filed in May and October, 2003.

either to retain experts and engage in more interviews, to await the receipt of reports already ordered by him, or to replace his counsel. "A late discovery of incriminating evidence or a late determination of the admissibility of incriminating evidence which occurs as a result of a claimed improper delay in the trial of a case does not alone present the kind of prejudice to a defendant's case with which constitutional speedy trial principles are concerned. The prejudice that is relevant is the impairment of the defendant's case by reason of the delay." *Commonwealth* v. *Lanigan*, 419 Mass. 15, 20 (1994). To the extent that the delay here allowed the Commonwealth to acquire updated reports and evaluations for its own case, it did not present the kind of prejudice to a defendant's case with which we are concerned.

While the primary obligation to bring the case to trial within the statutory period rests with the Commonwealth, "primary" does not mean "sole." Speedy trial provisions are generally interpreted similarly, *Commonwealth* v. *DeBella*, 442 Mass. at 690 n.9, and the defendant shares the obligation to take active steps to move his case through the system. See *Barry* v. *Commonwealth*, 390 Mass. 285, 296-297 (1983) ("If the rule is read to relieve defendants of the obligation to press their case through the criminal justice system, the public interest often will be thwarted by those defense counsel who decide that delay is the best defense tactic. Moreover, dismissal is a remedy which infringes drastically on the public interest in bringing guilty persons to trial. Dismissal is not called for where a defendant is at least partially responsible for delaying the date of a trial beyond that set by the rule" [citations and footnote omitted]).

We do not condone the extraordinary delay in this case, and we expect that the Commonwealth, defendants, and the trial court will take steps in the future to prevent any similar unexplained departures of this magnitude from the statutory periods, and to ensure that the reasons for any continuance beyond the sixty-day period of § 14(*a*) are supported on the record. *Commonwealth* v. *DeBella, supra* at 689. Under the circumstances of this case, however, where the record evidences no objections by the defendant to repeated continuances, "it would be unfair to attribute the delay to the Commonwealth."

*Id.* at 691. We therefore conclude that § 14(*a*) does not require a dismissal of the petition on this record.[4]

b. *The use of more than two examiners at trial.* The defendant originally met with one of the Commonwealth's qualified examiners, and refused to meet with the other. The Commonwealth moved to order the defendant to speak with the other, and the motion was granted in June, 2001. Later, the Commonwealth moved for the court to order the defendant to speak with "all the experts" whom the Commonwealth was planning to call at trial, including its expert, Dr. Silverman, who had been the Commonwealth's probable cause expert. The motion was granted in October, 2003.

The defendant claims that it was error to allow the Commonwealth to present evidence from three qualified examiners at trial, relying on the recent decision in *Commonwealth* v. *Poissant*, 443 Mass. 558 (2005). Without deciding the validity of this assertion, we note that the record contains no objection at trial to the testimony of the third qualified examiner. Even if the admission of that testimony could be characterized as error, our review here would be for a substantial risk of a miscarriage of justice. See *Redgate, petitioner*, 35 Mass. App. Ct. 495, 499 (1993), *S.C.*, 417 Mass. 799 (1994) ("an appellate court may consider a point not made below if failure to do so involves a substantial risk of a miscarriage of justice").

After the two qualified examiners examined the defendant, they found him to be a sexually dangerous person and in need of commitment. The third qualified examiner had previously interviewed the defendant for the probable cause hearing in October, 2000. He too found the defendant to be sexually dangerous. The judge's findings of fact from the trial show that the third qualified examiner's testimony was duplicative and cumulative of that presented by the other two examiners, each of whom believed that the defendant was an SDP who would likely reoffend. Contrast *Commonwealth* v. *Poissant, supra* at 560

---

[4]In light of the defendant's failure to preserve the issue at trial, and the fact that proceedings under the statute are civil rather than criminal in nature, see *Commonwealth* v. *Bruno*, 432 Mass. 489, 500 (2000), we need not consider the question whether the defendant might be entitled to retroactive application of the rule enunciated in *Commonwealth* v. *DeBella, supra* at 689. Cf. *Commonwealth* v. *Blake*, 49 Mass. App. Ct. 134, 135 (2000).

(Commonwealth sought third examiner after first two were unable to conclude that defendant was likely to reoffend). Even without the third qualified examiner's testimony, the judge here had ample evidence to find the defendant sexually dangerous. We therefore hold that the examination by the third qualified examiner, as well as his testimony, did not create a substantial risk of a miscarriage of justice.

c. *The defendant's waiver of trial by jury.* The defendant claims that his waiver of a trial by jury was not intelligent, and hence was involuntary, because he was erroneously informed by the judge that a unanimous verdict was required for his continuing commitment. There was no error. General Laws c. 123A, § 14(*d*), provides for unanimity, precisely as the defendant was informed.[5] The defendant's reliance on *McHoul, petitioner*, 445 Mass. 143 (2005), cert. denied sub nom. *McHoul* v. *Massachusetts*, 547 U.S. 1114 (2006), for the proposition that this may be "an issue of first impression" is without merit. *McHoul* concerned an apparently erroneous instruction to the jury that a unanimous verdict was *not* required, an error to which no objection was made and which was found to have been waived. *Id.* at 157.

d. *The defendant's remaining claims.* 1. *Ineffective assistance of counsel.*[6] The defendant claims ineffective assistance of counsel because defense counsel raised no objection when the judge ordered the defendant to be examined by Dr. Kiley, one of the two qualified examiners appointed pursuant to § 13(*a*) of the statute, after the expiration of the sixty-day period of commitment following a determination of probable cause.[7] The defendant argues that the continuance in place at that time violated the

[5]Section 14(*d*), added by St. 1999, c. 74, § 8, provides in pertinent part: "If after the trial, the jury finds unanimously and beyond a reasonable doubt that the person named in the petition is a sexually dangerous person, such person shall be committed."

[6]Despite the defendant's failure to satisfy the recommended prerequisite and move for a new trial before bringing an ineffective assistance claim, *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 107 (1999), we consider his assertion here under the narrow exception applicable when "the factual basis of the claim appears indisputably on the trial record." *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994). See *Commonwealth* v. *Anderson*, 58 Mass. App. Ct. 117, 124 n.8, cert. denied, 540 U.S. 1009 (2003).

[7]Dr. Kiley had filed his report in a timely fashion, within the forty-five-day

statute, an assertion that is without merit for the reasons set forth *supra.* We note as well that counsels' subsequent joint request for a continuance for the express purpose, among others, of awaiting an updated report from the defendant's expert suggests a cohesive strategic approach by defense counsel based on the premise that the more recent examination would favor the defendant. By any measure this is not "serious incompetency, inefficiency or inattention of counsel . . . falling measurably below what might be expected from an ordinary, fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

2. *The use of privileged psychiatric records.* The defendant asserts two separate instances of error in the use of privileged psychiatric records. First, he asserts error in the examiners' use of privileged records from the Baird Center and the Hillcrest Education Center that showed that the defendant had made efforts to control his sexual behavior, but had difficulty doing so. These records, however, were produced for all parties without objection prior to the probable cause hearing.[8] Any privilege attaching to these records was waived.

Second, the defendant asserts that he was improperly coerced to submit to an interview with the second qualified examiner without being informed that, as an alternative, he could refuse to do so if he were willing to forgo the use of evidence based on his interview with his own expert. This argument fails for two connected reasons. The defendant relies on the wording of the judge's order which does not explicitly set forth the choice the defendant claims he was forced to make.[9] See *Commonwealth* v. *Connors,* 447 Mass. 313, 316 (2006). However, the Commonwealth's motion clearly requested the alternatives to which the defendant makes reference, i.e., the exclusion of his own expert's testimony if the defendant refused to speak to Dr. Kiley, and the motion

---

time period required by § 13(*a*), despite the defendant's refusal to meet with him at that time.

[8] The judge's order required counsel for the parties to "maintain . . . such records confidentially and . . . show them only to their clients and expert witnesses."

[9] The order states: "Defendant is ordered to participate fully in an interview by Dr. Kiley or any appointed qualified examiner. Defense counsel may be present if the [defendant] so chooses, but that presence may be admissible as evidence at trial."

was allowed in its entirety. We do not view the language in the judge's order as denying in part the relief that was requested and approved. We note, however, that the warnings required by *Commonwealth* v. *Lamb*, 365 Mass. 265 (1974), were properly administered on each occasion that the defendant was interviewed. We are persuaded that the judge's order did not operate to override the examiner's opening statements to the defendant that he could participate as much or as little in the interview as he wished. A fair reading of the order would not reasonably lead the defendant to believe that he was obligated to disregard the warnings of the individual with whom he had been ordered to meet.

*Judgment affirmed.*