NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReportersjc.state.ma.us

SJC-12388

COMMONWEALTH  vs.  G.F.


Suffolk.     November 9, 2017. - March 20, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, & Cypher, JJ.


Sex Offender.  Constitutional Law, Sex offender.  Due Process of Law, Sex offender.  Practice, Civil, Sex offender, Civil commitment, Verdict.



Civil action commenced in the Superior Court Department on December 24, 2010.

A motion to modify the temporary order of confinement and for an order of custody conditions, filed on October 17, 2016, was heard by Douglas H. Wilkins, J., and questions of law were reported by him to the Appeals Court.

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on October 24, 2016.

The case was heard by Gaziano, J., and the matter was reported by him to the Appeals Court.

After consolidation in the Appeals Court, the Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Joseph M. Kenneally (Michael F. Farrington also present) for G.F.

John P. Zanini, Assistant District Attorney, for the Commonwealth.

GAZIANO, J.  This case concerns G. L. c. 123A, the statute governing civil commitment of sexually dangerous persons (SDP). Prior to civilly committing an individual under this statute, the Commonwealth must obtain a unanimous jury verdict finding that the individual is sexually dangerous.[1]  G. L. c. 123A, § 14 (d).  Subject to certain exceptions, the trial to determine sexual dangerousness must be held within sixty days after the Commonwealth files a petition for trial.  G. L. c. 123A, § 14 (a).  During this time, the individual is to be temporarily confined.  See G. L. c. 123A, § 14 (e); Commonwealth v. Pariseau, 466 Mass. 805, 808 (2014).

In this case, the Commonwealth filed a petition seeking to commit the petitioner as an SDP in December, 2010.  Following years of delay and three mistrials, the petitioner remains confined without a finding that he is sexually dangerous.  He contends that substantive due process and the SDP statute require dismissal of the Commonwealth's petition.  A judge of the Superior Court concluded that continued confinement violated the petitioner's substantive due process rights, ordered his

---

[1] Such a finding also may be obtained at a jury-waived trial, if neither party requests a jury trial.  G. L. c. 123A, § 14 (a).

release, and then stayed that order and reported a number of questions.

We conclude that the SDP statute permits a fourth trial in the circumstances of this case.  While due process would impose a limit on the number of retrials that may take place under the SDP statute, that limit has not been reached here.  The petitioner's nearly seven-year confinement without a finding of sexual dangerousness, however, does violate his substantive due process rights as provided by the Fifth and Fourteenth Amendments of the United States Constitution and the Massachusetts Declaration of Rights.  Accordingly, he must be afforded the opportunity to seek supervised release prior to his fourth trial.

1.  Background.  We summarize the uncontested facts from the record, discussed in part in two different Superior Court judges' decisions on the petitioner's motions for release from confinement.  See Chin v. Merriot, 470 Mass. 527, 529 (2015).

a.  Offenses.  The petitioner has pleaded guilty to sexual offenses on four separate occasions.  In 1980, he pleaded guilty in the California Superior Court to lewd and lascivious conduct upon a child.  On multiple occasions, he had sexually molested a friend's thirteen and eleven year old daughters.

In 1982, while he was on probation for these offenses, the petitioner sexually molested the thirteen year old daughter of a

friend, at knife point, in the friend's apartment. He pleaded guilty in the California Superior Court to lewd and lascivious conduct upon a child by force with the use of a deadly weapon.

In 1992, the petitioner also agreed to sufficient facts in the Massachusetts District Court to support convictions of, among others, open and gross lewdness and assault with a dangerous weapon. In October, 1993, the petitioner pleaded guilty in the Superior Court to charges of three counts of rape of a child; three counts of kidnapping; two counts of assault and battery; one count of mayhem, assault and battery by means of a dangerous weapon, and one count of making threats. The petitioner repeatedly had raped his girl friend's six year old daughter while she was bound and gagged. According to the child's statements, he threatened to kill her mother if the child said anything. The child reported that, on one occasion, her four year old sister entered the room, and the petitioner forced both girls to perform fellatio upon him. He also forced his girl friend to do so until she had an asthma attack. The petitioner was sentenced to concurrent terms of from fifteen to twenty years on each of the rape charges, and concurrent terms of from five to ten years on each of the charges of kidnapping and mayhem.

b. Proceedings prior to the three mistrials. Shortly before the petitioner's sentences were to end, the Commonwealth

retained as a qualifying examiner Dr. Carol Feldman to evaluate him. In December, 2010, Feldman determined that the petitioner suffers from pedophilia, a mental abnormality as defined in the SDP statute, as well as antisocial personality disorder, resulting in an inability to control his sexual impulses. Feldman analyzed multiple risk factors, including the petitioner's prior sexual offenses, his prior inability to abide by the rules of his probation, and his termination from sex offender treatment in 2007 after slapping another resident. She also utilized an actuarial tool that assesses the risk of recidivism. She concluded that "if [the petitioner] were released at this time, both his Mental Abnormality and Personality Disorder make it highly likely that he would recidivate sexually," and opined that he met the criteria for sexual dangerousness as defined by G. L. c. 123A, § 1.[2]

In December, 2010, the Commonwealth filed a petition pursuant to G. L. c. 123A, § 12 (b), alleging that the petitioner is still sexually dangerous. The Committee for Public Counsel Services assigned the petitioner an attorney, whom the petitioner asked to file a motion to dismiss the SDP

_____

[2] "To obtain a commitment of a sexually dangerous person, the Commonwealth must prove beyond a reasonable doubt that the defendant 'suffers from a mental abnormality or personality disorder which makes [him] likely to engage in sexual offenses if not confined to a secure facility.'" Commonwealth v. Nieves, 446 Mass. 583, 586-587 (2006), quoting G. L. c. 123A, § 1.

petition as untimely.[3]  In January, 2011, the Commonwealth moved to commit the petitioner to the Massachusetts Treatment Center (treatment center) pending a determination of probable cause pursuant to G. L. c. 123A, § 12 (e).  A Superior Court judge allowed the unopposed motion.  That month, the petitioner asked his attorney to withdraw as counsel because the attorney had not filed a motion to dismiss the SDP petition as the petitioner had requested and because, one month into their attorney-client relationship, the two had yet to meet.  The attorney did not withdraw at that time, and no formal filings were made requesting his withdrawal.

In February, 2011, the petitioner waived his right to a hearing and stipulated that there was probable cause to believe that he was sexually dangerous.  See G. L. c. 123A, § 12 (c).  A Superior Court judge accordingly found probable cause that the petitioner was sexually dangerous, and ordered him committed to the treatment center for a sixty-day period of evaluation, pursuant to G. L. c. 123A, § 13 (a).  While at the treatment center, the petitioner was evaluated by two qualified examiners, as required under G. L. c. 123A, § 13 (a).  In March, 2011, the

---

[3] The petitioner claimed that his sentence had been completed before the Commonwealth submitted its petition because he believed that a specific number of days should have been credited to his sentence.  This issue is not before us.

qualified examiners filed written reports in the Superior Court, concluding that the petitioner was sexually dangerous.

On March 21, 2011, the Commonwealth filed a petition for trial pursuant to G. L. c. 123A, § 14 (a).[4]  The trial was scheduled for June, 2011.  In April, 2011, the petitioner corresponded with his attorney about retaining experts to assess him, in addition to the qualified examiners that the Commonwealth would present at trial.  The attorney suggested two experts; the petitioner agreed to one and not the other.  That same month, the  petitioner told the attorney that he was not ready to set a trial date, even if this meant waiving his "time limits."  The petitioner explained that he needed time to "counter[] the [S]tate [qualified examiner] reports" and to ensure that his experts had sufficient time to interview him. He then once again asked his attorney to withdraw, and this time filed a motion requesting that the attorney be dismissed as counsel.  The petitioner also filed a pro se motion to dismiss the SDP petition as untimely.

In June, 2011, a Superior Court judge allowed the petitioner's motion to dismiss his counsel, canceled the trial

---

[4] A trial must begin within sixty days after the Commonwealth files an SDP petition, unless it is continued for good cause or in the interests of justice, as long as the person named in the petition will not be prejudiced.  See G. L. c. 123A, § 14 (a); Commonwealth v. DeBella, 442 Mass. 683, 687 (2004).

scheduled for that month, and set a status date in July, 2011. Later that month, the Commonwealth moved to continue the status date for another ten days, so that the assistant district attorney could attend to a family matter. The judge set a new hearing date for early August. At the August hearing, a new attorney appeared for the petitioner.

In May, 2012, after no further proceedings had taken place, the assistant district attorney wrote to the petitioner's counsel, proposing to "get this case back on track." At the end of July, without hearing from the petitioner's counsel, the assistant district attorney moved for trial. At an August, 2012, hearing, a Superior Court judge allowed the Commonwealth's motion and the parties set a trial date for November, 2012. At a status hearing in September, the judge allowed a motion by the Commonwealth to continue the trial because one of the qualified examiners was scheduled to be on vacation during the time that the trial was scheduled. The trial was rescheduled for December. The Commonwealth opposed the petitioner's previously-filed pro se motion to dismiss. The Commonwealth also moved for an order to update the qualified examiner reports, which the court allowed.

Later in September, the petitioner's counsel moved to dismiss the petition, arguing that the Commonwealth had failed to begin trial within sixty days of its petition, as required by

G. L. c. 123A, § 14 (a).  The following month, finding "sufficient circumstantial evidence" of compliance with G. L. c. 123A, § 14 (a), the judge denied this motion.  By December, the court received updated written reports from the qualified examiners and the petitioner's experts.  In a motion and accompanying affidavit filed that month, the petitioner requested that the trial be postponed, because his attorney had not received recordings of his interviews with the qualified examiners.  The petitioner also waived his statutory rights to a prompt trial.  The judge allowed this motion to continue for "good cause," and set trial for the week of February 4, 2013, the date that the petitioner had requested, in order to accommodate his experts.

In January, 2013, the petitioner again moved to reschedule the trial, this time to February 25, 2013, "or a date agreeable to the court," and again waived his rights to a prompt trial. For reasons that are not apparent from the record, the judge subsequently rescheduled the trial to April, 2013.[5]

c.  The three mistrials.  The petitioner's first SDP trial took place in April, 2013, more than two years after the

---

[5] Separately, in November, 2012, the petitioner filed a petition for relief pursuant to G. L. c. 211, § 3, from a Superior Court judge's October, 2012 order denying his motion to dismiss.  A single justice in the county court denied the petition, and the full court affirmed the denial.

Commonwealth filed the SDP petition in March of 2011.  The petitioner was then fifty-five years old.

After four days of trial, the jury deliberated for two days, but were not able to reach a unanimous verdict.  The judge declared a mistrial.  In June, the Commonwealth moved to update the qualified examiner reports; the motion was allowed.  In September, the parties moved jointly to reschedule a pretrial status hearing to October.  When the petitioner's counsel had a medical emergency, the hearing was moved again, to one week later.  Following the start of medical complications, however, the petitioner's counsel experienced "an unforeseen, unexpected and unanticipated incapacity to engage in the on-going preparation of [the petitioner's] opposition to [the SDP] petition for three months."  A hearing scheduled for December, 2013, subsequently was canceled, and the petitioner requested that a January, 2014, hearing be postponed.  Hearings scheduled for February, 2014, and March, 2014, also were not held.  In February, 2014, the two qualified examiners filed updated reports with the court.

In March, 2014, the petitioner moved unsuccessfully to continue his trial -- scheduled to begin that month before a different judge -- in a motion that again waived his statutory right to a prompt trial.  The petitioner requested the postponement after one of his experts stated that he would be

unable to testify effectively before the judge who would oversee the March trial due to "continuing confrontations" concerning the expert's requests for payment. That motion was denied the same month. The judge also denied motions for a directed verdict, mistrial, and dismissal of the SDP petition.

The petitioner's second trial took place over approximately two weeks in March, 2014. The petitioner filed another motion for a directed verdict, which was denied. At the end of the trial, the judge declared a mistrial because the jury were once again unable to reach a verdict. In April, 2014, the judge held a trial assignment conference.

In May, the petitioner requested to continue the third trial, which was scheduled for the end of that month, to September, in order to provide him time to interview new witnesses and to consult with an expert. A different Superior Court judge allowed the motion, but ordered the parties to return in June for a hearing on a trial date. In September, the petitioner's counsel was hospitalized and underwent major surgery. A trial that had been scheduled for December was canceled.

In March, 2015, updated qualified examiner reports were filed with the Superior Court, and the Commonwealth petitioned for a trial within sixty days. The trial was scheduled for June. The petitioner filed a motion to dismiss. He argued that

because G. L. c. 123A, § 14 (d), provides only that a unanimous jury finding of sexual dangerousness requires commitment to the treatment center, in the event that a jury failed to reach unanimity, the Commonwealth's petition would have to be dismissed and he would have to be released.[6]  In April, this motion was denied, on the grounds that the jury's failure to reach a unanimous verdict did not require either a directed verdict or dismissal of the SDP petition.

In May, the petitioner waived the  trial date that had been scheduled for June, due to his attorney's medical complications and resulting temporary inability to work on his case.  The petitioner expressed his desire to have the same counsel continue to represent him, and "waive[d] all of [his] procedural rights for a trial of this action during the next four months." The judge allowed this motion and ordered the parties to confer with the session clerk to set a new trial date.  Also that month, the Commonwealth moved to admit evidence that, prior to the third trial, the petitioner had declined to speak with the qualified examiners; the motion was allowed.

_____

[6] "If after trial, the jury find[] unanimously and beyond a reasonable doubt that the person named in the petition is a sexually dangerous person, such person shall be committed to the treatment center . . . for an indeterminate period of a minimum of one day and a maximum of such person's natural life until discharged pursuant to the provisions of [G. L. c. 123A, § 9]." G. L. c. 123A, § 14 (d).

In August, 2015, the petitioner moved to continue his trial to December because of his attorney's medical complications and resulting incapacity. The judge allowed the continuance, and scheduled the trial for January, 2016; the parties thereafter jointly requested that date be postponed. In January, 2016, the court received updated reports from the qualified examiners.

The petitioner's third trial took place in January, 2016; at trial he again filed a motion for a directed verdict. The two qualified examiners testified that the petitioner was likely to reoffend, due in part to his failure to complete sex offender treatment. The petitioner responded that core sex offender treatment was unavailable to him during his pretrial confinement, and therefore he last had participated in core treatment during his prison sentence, in 2007.[7] According to the testimony at trial, the only sex offender treatment levels available to the petitioner while he was being held in pretrial confinement are ones that he had completed while serving his criminal sentence.[8]

---

[7] The petitioner was terminated from core sex offender treatment in 2007 for noncompliance with institution rules that treatment professionals interpreted as a failure to learn and apply the self-control taught in treatment.

[8] Full treatment, developed for individuals who are committed to the treatment center after being found sexually dangerous, begins with an assessment period that can take months to complete. As a result, full treatment has been deemed infeasible for individuals awaiting an SDP trial, whose

The third trial also ended in a mistrial when the jury were unable to reach a unanimous verdict. One juror sent the judge a note about the petitioner's decision not to speak with a qualified examiner prior to the third trial, expressing his view that, by refusing to be available for interviews with qualified examiners, the petitioner could "virtually guarantee" a mistrial. The petitioner had asked the judge to instruct the jury that a unanimous verdict was required to find him sexually dangerous, but that only ten votes were needed to find that he was not (asymmetrical jury verdict). The judge denied this request.

d. Proceedings before fourth trial. The Commonwealth moved for a fourth trial, and the trial judge set a trial date for May, 2016. In January, 2016, the petitioner filed a motion to modify the terms of his confinement; the Commonwealth opposed the motion. In February, concluding that due process required that the petitioner be granted access to full sex offender treatment during his pretrial confinement, the same judge denied the motion in part and allowed it in part. The judge ordered the Commonwealth to file a report concerning whether to offer the petitioner full sex offender treatment or, in the alternative, to show cause why the petitioner should not be

commitment is intended to last for at most a few months. See G. L. c. 123A, §§ 13(a), 14(a).

released on constitutional grounds or offered another alternative to detention that the Commonwealth might suggest. The judge also changed his view as to the asymmetrical jury verdict, stating that he would instruct the jury that only ten votes were required to find that the petitioner was not sexually dangerous, if the petitioner so requested. The Commonwealth filed a notice of interlocutory appeal as to the decision regarding the jury verdict. In March, the Commonwealth learned that the petitioner had been offered and declined sex offender treatment.

In May, 2016, the petitioner filed a motion for directed verdict or dismissal of the petition. The Commonwealth opposed this motion, and the judge denied it. Due to his counsel's health, the petitioner subsequently moved to continue the May trial. The judge allowed the motion and assigned the earliest possible trial date, which was in October, 2016.

In June, 2016, both parties filed a number of motions with regard to the admissible evidence at the forthcoming trial. The Commonwealth again sought to exclude evidence of the date of the filing of its SDP petition, and again moved to admit evidence that the petitioner had refused to speak with the qualified examiners prior to the third trial. The petitioner filed a "Memorandum in Support of Right to Refuse Additional Interviews of Qualified Examiners." After a hearing, the petitioner filed

before the single justice of the Appeals Court a petition for leave to appeal from the May, 2016, denial of his motion to dismiss the SDP petition; this petition was dismissed as untimely.  Separately, in August, 2016, a single justice of the Appeals Court denied without prejudice the Commonwealth's petition for leave to appeal from the asymmetrical jury instruction.

A few days before the scheduled trial in October, 2016, a single justice of the Appeals Court stayed the trial.  A Superior Court judge then reported the case for appellate determination pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996).[9]  Having concluded that continued confinement would violate the petitioner's substantive due process rights, the judge also ordered the petitioner released with conditions pending trial.  The single justice stayed this order pending a decision by the full court.

The petitioner filed a petition for relief pursuant to G. L. c. 211, § 3, in the county court.  In December, 2016, he moved to consolidate the claims raised in that petition with the case that had been reported to the Appeals Court.  A single justice of this court ordered that the claims raised in the petitioner's G. L. c. 211, § 3, petition  be transferred to the

---

[9] Among the reported questions, the judge included his proposed instruction on asymmetrical jury verdicts.

Appeals Court. The Appeals Court subsequently consolidated the petitioner's claims with the related reported questions. We transferred the matter to this court on our own motion.

2. <u>Discussion</u>. We are asked to resolve the following reported questions:

"1. After three mistrials resulting from jury deadlock, does this court have the statutory and constitutional authority to hold a fourth trial on the Commonwealth's petition to commit [the petitioner] as a sexually dangerous person under G. L. c. 123A, § 12?

"2. If so, may the Commonwealth continue to keep [the petitioner] confined in strict security pending trial for more than 5 3/4 years based solely upon a stipulation of probable cause in January[,] 2011, consistent with statutory and constitutional principles, including due process and equal protection?

"3. In the absence of statutory authority, does this [c]ourt have any power to conduct a hearing to determine whether [the petitioner] is sexually dangerous solely for purposes of pretrial detention and, if so, must such a determination be made by a preponderance of evidence, clear and convincing evidence, beyond a reasonable doubt or some other burden of proof?

"4. If the [c]ourt may continue to hold trials on the Commonwealth's petition in this case, what proportion of the jury is required to return a verdict of 'not sexually dangerous' under equal protection and due process principles?

"5. Does the [c]ourt have any power to impose bail, electronic monitoring, minimum security or other alterations in the strict security required by G. L. c. 123A, § 14 (<u>a</u>)?"

We review these questions of law de novo. See <u>Commonwealth</u> v. <u>Diggs</u>, 475 Mass. 79, 81 (2016).

We conclude that the SDP statute permits a fourth trial in this case. While due process would not permit an indefinite

number of retrials, see Gomes v. Gaughan, 471 F.2d 794, 797 (1st Cir. 1973), that limit has not been reached here, so the petitioner may be retried.

Although the SDP statute requires confinement until the end of the SDP trial, the continued confinement in this case, without a finding of sexual dangerousness beyond a reasonable doubt, violates the petitioner's substantive due process rights. As a result, we conclude that he must be afforded the opportunity to seek supervised release, subject to conditions that the judge determines are necessary in order to protect public safety, pending his fourth SDP trial. At a hearing to determine whether the petitioner may be released pending retrial, the Commonwealth must show by clear and convincing evidence that no conditions reasonably could assure that public safety would be protected if the petitioner were to be released.

If a mistrial occurs at an SDP trial following the release of the rescript in this case, any individual who is the subject of an SDP petition must be afforded the opportunity to seek supervised release according to these procedures.[10]

Consistent with existing statutory and common law, at the petitioner's fourth trial, a unanimous jury will be required in

---

[10] This shall not apply where a mistrial is necessitated by the misconduct of an individual who is the subject of an SDP petition or his counsel at trial.

order to make a finding either that the petitioner is sexually dangerous, or is not sexually dangerous.

a. Whether a fourth trial may be conducted. General Laws c. 123A, § 14 (d), provides, "If after trial, the jury find[] unanimously and beyond a reasonable doubt that the person named in the petition is a sexually dangerous person, such person shall be committed to the treatment center." Unlike lawmakers in other States, the Legislature did not limit the number of times the Commonwealth could seek an SDP finding, or restrict the circumstances under which a retrial could take place. Compare id. with N.Y. Mental Hygiene Law § 10.07 (McKinney 2011) (if jury were twice unable to render unanimous verdict, court shall dismiss petition); Fla. Stat. Ann. § 394.917(1) (West 2011) (if jury are unable to reach unanimous verdict, judge must declare mistrial and poll jury, and may conduct retrial only if majority would find respondent sexually dangerous). See Nemet v. Boston Water & Sewer Comm'n, 56 Mass. App. Ct. 104, 113 (2002) (had Legislature intended different policy, "it is reasonable to think that it would have worded the statute in that manner, as other State legislatures have done").

The SDP statute provides only that commitment is required after a unanimous finding of sexual dangerousness; it does not specify the proper course of action in circumstances where the jury are unable to reach a verdict. See G. L. c. 123A,

§ 14 (d).  The petitioner argues that if the jury do not reach a unanimous finding, the statutory language requires that the petition be dismissed.  Jury deadlock, however, "has long been considered the 'classic basis' for a proper mistrial," Commonwealth v. Phim, 462 Mass. 470, 473 (2012), quoting Blueford v. Arkansas, 566 U.S. 599, 609 (2012), and permits another trial.  Downum v. United States, 372 U.S. 734, 735-736 (1963).

We assume that the Legislature does not depart from settled law without clearly indicating its intent to do so.  See Greater Boston Real Estate Bd. v. Department of Telecomm. & Energy, 438 Mass. 197, 202 (2002), quoting Ferullo's Case, 331 Mass. 635, 637 (1954).  While, in crafting the SDP commitment scheme, the Legislature had the power to supersede the common law, see McHoul, petitioner, 445 Mass. 143, 147 (2005), cert. denied, 547 U.S. 1114 (2006), it has not done so with regard to the procedure following a mistrial.  Had the Legislature intended that jury deadlock would result in dismissal, rather than retrial, "the wording of the statute could have easily reflected [this intent].  It does not."  Rowley v. Massachusetts Elec. Co., 438 Mass. 798, 802 (2003).  As a result, we conclude that the SDP statute does not require dismissal in the event that the jury are unable to reach a verdict, and permits a fourth trial in this case.

We conclude further that a fourth trial in the circumstances of this case would not offend substantive due process. Substantive due process prohibits governmental conduct that "shocks the conscience" or infringes on rights "implicit in the concept of ordered liberty" (citation omitted). Commonwealth v. Fay, 467 Mass. 574, 583, cert. denied, 135 S. Ct. 150 (2014). The "requirements for minimum due process may vary depending on the context." Commonwealth v. Burgess, 450 Mass. 366, 372 (2008), and cases cited. Although "the oppressive misuse of multiple commitment proceedings would doubtless be a violation of due process," Gomes, 471 F.2d at 797, a fourth trial here would not rise to that level.

We interpret the SDP civil commitment statute in light of its dual goals: protecting public safety while safeguarding respondents' procedural rights. See Commonwealth v. Knapp, 441 Mass. 157, 160 (2004). "[I]t is beyond question that the Legislature has a compelling interest in protecting the public from sexually dangerous persons." Burgess, 450 Mass. at 376. We repeatedly have affirmed the statute's balancing of respondents' rights and the goal of protecting public safety. See, e.g., Pariseau, 466 Mass. at 811, 814 (2014); Commonwealth v. Nieves, 446 Mass. 583, 594 (2006). Both interests remain at stake in this case. While the Commonwealth has been unable to secure a unanimous jury verdict finding the petitioner to be

sexually dangerous, jury disagreement does not necessarily indicate a failure of proof. See Sheridan, petitioner, 422 Mass. 776, 780 (1996). Given the possibility of a risk to public safety, the Commonwealth's decision to retry the petitioner is not an arbitrary use of government power, rising to the level of a substantive due process violation. See County of Sacramento v. Lewis, 523 U.S. 833, 836 (1998) (arbitrary conduct that shocks conscience violates substantive due process).

Courts in other jurisdictions have held that two or even three criminal retrials may be held without violating due process, so long as the prosecution acts in good faith. See, e.g., United States v. Hall, 551 F.3d 257, 273 (4th Cir. 2009) (due process did not prohibit retrial after three mistrials); United States v. Quijada, 588 F.2d 1253, 1255 (9th Cir. 1978) (due process permitted third trial after two mistrials, absent harassment by prosecutor); State v. Cordova, 128 N.M. 390, 394 (1999) (same). See also United States vs. Jones, U.S. Ct. App., No. 96-1667, slip op. (2d Cir. July 25, 1997), cert. denied, 522 U.S. 976 (1997) (fourth trial not barred by due process after two juries were unable to reach verdict and one conviction later reversed); People v. Sierb, 456 Mich. 519, 521, 525 (1998) (due process did not preclude third trial after two juries were unable to reach verdict). The petitioner has adduced no case,

and we are aware of none, indicating that due process prohibits a retrial after three mistrials.

The purpose of the SDP statute is "to have cases brought to trial rapidly, but not to deny justice in the interest of expediency." Commonwealth v. DeBella, 442 Mass. 683, 691 (2004). At a certain point, the use of retrials undoubtedly would violate due process. Gomes, 471 F.2d at 797. See United States v. Castellanos, 478 F.2d 749, 753 n.4 (2d Cir. 1973) (multiple retrials could violate due process if prosecution sought "trial by attrition"). That point has not been reached here, however. Given the potential threat to public safety, dismissal of the SDP petition in this case is not necessary in order to balance the constitutional interests at play. As a result, we conclude that the petitioner may be retried.

b. Resulting delay. Permitting a fourth trial will, of course, occasion further delay. Recognizing that the petitioner already has experienced extraordinary delay -- years beyond what the Legislature likely envisioned when it drafted the SDP statute -- we nonetheless conclude that, in this case, the delay resulting from the allowance of a fourth trial is not in violation of statutory requirements. Due process, however, entitles the petitioner to seek supervised release pending retrial.

General Laws c. 123A, § 14 (a), generally requires that an SDP trial be held within sixty days after the Commonwealth files its petition, but allows delays for good cause or in the interest of justice, as long as the respondent is not prejudiced.  See Gangi v. Commonwealth, 462 Mass. 158, 161 (2012).  Where an individual has acquiesced to the delay, the Commonwealth may be able to show good cause for exceeding the sixty-day statutory deadline.  See DeBella, 442 Mass. at 690. See also Knapp, 441 Mass. at 166 n.12 (no statutory violation although trial had not occurred over two years after probable cause finding, where "the judge noted that trial has been delayed '[m]ostly at the request of the [defendant]'").  While the delay in this case cannot be attributed entirely to one party's actions, it falls within the statutory exceptions to the sixty-day requirement.

The petitioner sought to postpone his trial and related proceedings on several occasions.  In April, 2011, he told his counsel that he did not want a trial to be held right away.  He subsequently requested that his trial, then scheduled for December, 2012, be postponed until February, 2013, and then again to later that month.  In both postponement requests, the petitioner waived his right to a prompt trial.  Following the first mistrial, the petitioner's newly appointed lawyer experienced medical complications, and several pretrial

conferences and hearings subsequently were postponed.  After the
second mistrial, the petitioner repeatedly requested that his
third trial be continued due to his attorney's medical
complications, and the trial subsequently was postponed, from
May, 2014, until January, 2016.  While his attorney's medical
situation was undoubtedly out of the petitioner's hands, he
chose to continue working with his attorney, although he was
aware that a delay could occur as a result.  See DeBella, 442
Mass. at 690 (where respondent acquiesces in delay, statutory
exception to sixty-day deadline applies).

The delay preceding the first trial included a period from
August, 2011, through May, 2012, when no action took place.  The
responsibility for this delay appears to rest with both parties.
While the Commonwealth bears the primary responsibility for
bringing the case to trial within the statutory time frame, "the
defendant shares the obligation to take active steps to move his
case through the system."  Commonwealth v. Lynch, 70 Mass. App.
Ct. 22, 27 (2007).  The petitioner and his attorney took no
action in response to a May, 2012, letter from the Commonwealth
proposing to "get this case back on track," until the
Commonwealth petitioned for trial in July of that year.

Some portion of the delay in this case clearly resulted
from the Commonwealth's actions.  The Commonwealth, for example,
took two months to request updated qualified examiner reports

after the first mistrial.  The Commonwealth also moved to continue a status conference for eleven days in July, 2011, because an assistant district attorney needed to tend to a family matter, and moved to continue the first trial from November, 2012, because a qualified examiner would be on vacation that day.  Given the relatively short time frame of both delays, and the fact that the Commonwealth requested these postponements for reasons beyond its control, the allowance of these continuances was reasonable and the brief delays were merited.  See Knapp, 441 Mass. at 165-166.

Additionally, the petitioner has experienced substantial delay since his third trial took place in January, 2016.  To the extent that this resulted from interlocutory appeals, it falls within the good cause exception to the sixty-day requirement.  See Mass. R. Crim. P. 36 (b) (2) (A) (iv), 378 Mass. 909 (1979) (excluding time elapsed during interlocutory appeals from time within which criminal trial must commence).  See also Pariseau, 466 Mass. at 811 (criminal context may provide guidance in construing SDP statute).  The petitioner also requested that the fourth trial, scheduled for May, 2016, be continued due to his counsel's health.

Finally, the majority of the delay undoubtedly has resulted because the petitioner's first three trials resulted in jury deadlock.  While the petitioner is not responsible for this

portion of the delay, for purposes of determining whether the statutory deadline has been met, the clock must restart after a mistrial. See Mass. R. Crim. P. 36 (b) (1) (D), as amended, 422 Mass. 1503 (1996) (restarting speedy trial timeline after retrial). Additionally, these delays were merited: the Commonwealth was attempting to adjudicate the petitioner's sexual dangerousness.

In sum, although the delay in this case is extraordinary, it occurred in large part due to circumstances that cannot be attributed to the Commonwealth, and therefore falls within the statutory exceptions to the sixty-day requirement. See G. L. c. 123A, § 14 (a).

We note, however, that G. L. c. 123A, § 14 (a), prohibits delay -- even for good cause or in the interest of justice -- where "the person named in the [SDP] petition will be substantially prejudiced." The petitioner's inability to receive SDP treatment pending trial clearly constituted prejudice. See Pariseau, 466 Mass. at 811. Following the third trial, the Department of Correction ultimately offered treatment, which the petitioner thereafter declined. Considering the circumstances overall, there is no indication that the petitioner would be prejudiced at a fourth trial, given that he will receive the protections guaranteed by G. L. c. 123A, § 14 (a). "The robust, adversary character of the

c. 123A procedure minimizes the risk of the erroneous commitment of a person who is not sexually dangerous." Nieves, 446 Mass. at 591. Given this, in some other circumstances involving substantial delay, the court has concluded that a petitioner's "case was not impaired by reason of the delay," and therefore that dismissal was not required. See Commonwealth v. Blake, 454 Mass. 267, 280 (2009) (Ireland, J., concurring). Such is the case here. Accordingly, at this juncture, dismissal of the Commonwealth's petition is not required. Nonetheless, due process demands the petitioner be afforded certain relief at this point.

Substantive due process prohibits government conduct that "shocks the conscience," or interferes with "rights implicit in the concept of ordered liberty" (citation omitted). Fay, 467 Mass. at 583. Where the government seeks to infringe on a fundamental right, in order to comply with the requirements of substantive due process, its action must be narrowly tailored to further a compelling and legitimate government interest. Commonwealth v. Aime, 414 Mass. 667, 673 (1993). "The right of an individual to be free from physical restraint is a paradigmatic fundamental right." Knapp, 441 Mass. at 164.

The SDP statute requires that the subject of an SDP petition be confined between a probable cause finding and the resolution of the SDP trial. See Pariseau, 466 Mass. at 809.

Nonetheless, "[i]t is settled that a temporary civil commitment to the treatment center, pending the outcome of a G. L. c. 123A hearing, implicates a liberty interest, and therefore, due process protections apply." Blake, 454 Mass. at 276 (Ireland, J., concurring), and cases cited. As a result, "we . . . go beyond the language of the statute to determine whether its apparent intent is constrained by the requirements of due process under the State or Federal Constitutions." Sheridan, petitioner, 422 Mass. at 778. In this case, the petitioner's extraordinarily long commitment absent a finding of sexual dangerousness violates substantive due process.

We consistently have concluded that confinement pending an SDP trial is constitutional, only because that commitment is temporary, and the SDP statute requires an expedited timeline for trial. See, e.g., Pariseau, 466 Mass. at 811, n.8; Blake, 454 Mass. at 268; id. at 278 (Ireland, J., concurring); Knapp, 441 Mass. at 168. See also Gangi, 462 Mass. at 160 ("Among the rights afforded an individual subject to confinement under G. L. c. 123A are strict procedural deadlines governing commitment proceedings"). "The balancing of interests contemplated by the statutory framework may be upset when an SDP determination is not made within the established time frames." Pariseau, 466 Mass. at 813. Civil commitment of people who potentially pose a threat to public safety does not violate substantive due

process, as long as that commitment takes place according to proper procedures and evidentiary standards. See Fay, 467 Mass. at 584. "It is uncontested that G. L. c. 123A outlines proper procedures and evidentiary standards," Fay, supra at 585, but the statute does not envision commitment for almost seven years, based merely on a determination of probable cause.

While substantive due process permits limited confinement after a probable cause determination, it does not permit the Commonwealth to hold an individual indefinitely while repeatedly seeking a finding of sexual dangerousness. See Andrews, petitioner, 368 Mass. 468, 488 (1975) (Commonwealth cannot hold person indefinitely without proving sexual dangerousness beyond reasonable doubt). "[C]onfinement without legal justification is never innocuous," Commonwealth v. Kennedy, 435 Mass. 527, 530 (2001), and the legal justification for confinement weakens after an SDP trial is concluded without a finding of sexual dangerousness. See Pariseau, 466 Mass. at 813.

Due process demands that the petitioner have the opportunity to seek supervised release. See Pariseau, 466 Mass. at 814. In that case, we considered the appropriate remedy after a judge presided over a jury-waived trial pursuant to G. L. c. 123A, § 14, and then failed to meet the thirty-day deadline for rendering a verdict. Pariseau, 466 Mass. at 806.

See Blake, 454 Mass. at 268.[11]  Because the petitioner was not prejudiced by the delay, however, due process required neither dismissal nor a new trial.  See Pariseau, supra at 812-813.  We determined, however, that "justification for continued confinement becomes considerably more attenuated after the passage of this thirty-day period, or any agreed-upon extension, absent countervailing extraordinary circumstances."  Id. at 814.  Accordingly, we concluded "that a defendant may seek review by the trial judge if, thirty days after the end of a jury-waived trial, the judge has not issued a decision on the Commonwealth's petition pursuant to G. L. c. 123A, § 14.  A defendant may move for a prompt decision and supervised release while the matter remains under advisement and until a decision issues regarding sexual dangerousness."  Id.

The circumstances here require a similar conclusion.  In the event of a mistrial, an individual who is the subject of an SDP petition may seek release under the supervision of the Department of Probation pending retrial.  "The availability of release in such circumstances is justified by [such a person's] liberty interest, which the Legislature recognized when it

---

[11] The SDP statute does not provide a deadline by which a judge must render a verdict in a jury-waived trial.  See generally G. L. c. 123A, § 14.  Consistent with the expedited pace of the SDP statute, in Commonwealth v. Blake, 454 Mass. 267, 268 (2009), we determined that, absent extraordinary circumstances, the judge must render a decision within thirty days after the end of a trial.

established an expedited pace for proceedings under" the SDP statute.  Id.  The opportunity ensures that the SDP regime is sufficiently "narrowly tailored," Aime, 414 Mass. at 673, under the strictures of substantive due process, yet meets the government's compelling interest in protecting public safety.  See Burgess, 450 Mass. at 376.

We recognize that, here, the petitioner will be afforded the opportunity for supervised release only after his third mistrial, notwithstanding our conclusion that this right exists after a single mistrial.  Nonetheless, due process does not require dismissal in this case.  As the Superior Court judge noted, "The absence of full sex offender treatment plays a major role in the substantive due process violation."  See Pariseau, supra, at 811 (inability to access sex offender treatment constitutes prejudice).  After the third mistrial, the Commonwealth ultimately offered full sex offender treatment, which the petitioner declined.  "Prejudice required for dismissal focuses on the subsequent trial and the interference with procedural rights therein." Commonwealth v. Viverito, 422 Mass. 228, 231 (1996).  The delay in this case has not impaired the petitioner's ability to mount a legal defense at his fourth trial.  In the absence of prejudice, dismissal of the SDP petition is not required, where other remedies can ensure

compliance with the requirements of due process.  See Pariseau, supra, at 812.

c.  Supervised release hearing.  The criminal context can provide useful guidance as to the appropriate procedures for a supervised release hearing under the SDP framework.  See Pariseau, 466 Mass. at 813-814.  We look particularly to G. L. c. 276, § 58A, which permits pretrial detention of persons accused of certain crimes on the grounds of dangerousness, in order to protect public safety.  We have determined that this scheme meets the requirements of substantive due process provided by the Federal and State Constitutions.  Mendonza v. Commonwealth, 423 Mass. 771, 778, 782 790 (1996).  The pretrial detention statute applies only to individuals who have been arrested for specific dangerous offenses, and requires the government first to show probable cause.  Id. at 774.  The SDP civil commitment regime, which applies only to individuals who have committed specified sex offenses, and requires a probable cause finding before initial commitment, is similar in these respects.  See G. L. c. 123A, §§ 1, 13.

Under the pretrial detention statute, before an individual may be detained pending trial, a judge must find "by clear and convincing evidence that no conditions of release will reasonably assure the safety of any other person or the community."  G. L. c. 276, § 58A (3).  The individual has the

right to be represented by counsel, to testify, present and cross-examine witnesses, and present information.  G. L. c. 276, § 58A (4).  In the event of a negative determination in the District Court Department or the Boston Municipal Court Department, the individual may seek review in the Superior Court Department, and the petition for review must be heard within two days.  G. L. c. 276, § 58A (7).  A bail decision by a Superior Court judge is reviewable in the county court under G. L. c. 211, § 3.  See Brangan v. Commonwealth, 477 Mass. 691, 705 (2017).  See United States v. Salerno, 481 U.S. 739, 751-752 (1987) (upholding Federal Bail Reform Act, which also requires adversary hearing using clear and convincing evidence standard, and provides for expedited appeal); Aime, 414 Mass. at 680, quoting Foucha v. Louisiana, 504 U.S. 71, 83 (1992) (Federal Bail Reform Act represents "one of those carefully limited exceptions [to pretrial freedom] permitted by the due process clause").  In the event that a judge determines that no conditions of release reasonably will assure the safety of any other person or the community, G. L. c.  123A, § 58A (3), permits pretrial detention for 120 days, excluding any period of delay as defined in Mass. R. Crim. P. 36 (b) (2).

Applying similar principles to the SDP regime, following a mistrial, a Superior Court judge must conduct an adversary hearing to determine whether the subject of the petition can be

released under conditions that reasonably would ensure public safety. See G. L. c. 276, § 58A (3). At such a hearing, due process requires the individual have all of the rights afforded at a hearing under G. L. c. 276, § 58A (4), including the right to be represented by counsel, to testify, to present and cross-examine witnesses, and to present information. If the judge concludes that public safety concerns could be addressed by imposition of conditions, the judge may order release, with conditions, such as electronic monitoring, that he or she deems necessary. The judge may order the individual held in custody only if the judge finds by clear and convincing evidence that no conditions reasonably can ensure public safety.

In determining whether any conditions reasonably could ensure public safety, a judge should consider those factors set forth in G. L. c. 276, § 58A (5), and those risk factors provided in the regulations of the Sex Offender Registry Board (SORB) that are relevant to the current mental state of a person confined pending an SDP trial.[12] See G. L. c. 6, § 178K (1) (SORB risk factors used to assess risk of recidivism); 803 Code

---

[12] Relevant risk factors contained in the Sex Offender Registry Board's regulations include statutorily defined mental abnormality; behavior while incarcerated or civilly committed; recent threats made by the respondent; hostility towards women; less than satisfactory participation in sex offender treatment; age; physical condition; and participation in or completion of sex offender treatment. See 803 Code Mass. Regs. §§ 1.33(1), (12), (14), (15), (24), (30), (31), (32) (2016).

Mass. Regs. § 1.33 (2016).  As it will at trial, the inquiry should focus on the individual's current mental state.  See Commonwealth v. McLeod, 437 Mass. 286, 291 (2002) ("the requisite sexual offense conviction is not the basis for the commitment [rather it is mental condition]" [emphasis in original]).  Whereas, at a probable cause hearing, the court lacks "the necessary and critical expert evidence of sexual dangerousness that will be offered at a trial on a petition for commitment under" the SDP statute, Commonwealth v. Reese, 438 Mass. 519, 523-524 (2003), following a mistrial, the court may consult the qualified examiner reports and any other expert testimony presented at trial.  See G. L. c. 123A, § 13 (a).  Cf. Green, petitioner, 475 Mass. 624, 630 (2016).

If a judge determines, after a hearing held pursuant to these procedures, that no conditions of release reasonably will assure the safety of any other person or the community, the individual shall remain confined until retrial.[13]  If a petition for release is denied, the court must order the Commonwealth to offer SDP treatment, in order to avoid prejudice to the individual in subsequent trials to determine sexual

---

[13] Accordingly, the 120-day time limit for pretrial confinement under G. L. c. 123A, § 58A (3), is inapplicable here.

dangerousness.[14]  See Pariseau, 466 Mass. at 811; G. L. c. 123A,
§ 14 (a).  If a second mistrial occurs, the individual must have
the opportunity to seek supervised release again, under the
procedures outlined.

Although the SDP statute does not explicitly include
provisions regarding a supervised release hearing in these
circumstances, "[w]e recognize that the courts of the
Commonwealth have certain inherent and implied powers in
addition to those powers expressly enumerated in various
statutes."  Department of Mental Retardation v. Kendrew, 418
Mass. 50, 55 (1994).  See Pariseau, 466 Mass. at 814 (judge may
allow supervised release pending decision on sexual
dangerousness in jury-waived trial, notwithstanding absence of
express statutory authority); Commonwealth v. Parra, 445 Mass.
262, 266 n.5 (2005) ("this court ordered the release of the
defendant pending outcome of this appeal, on appropriate
conditions to be determined after a hearing before a judge in
the Superior Court").  Due process requires that an individual
held pursuant to the SDP statute have the opportunity to seek
supervised release following a mistrial, and must be released
unless a judge determines by clear and convincing evidence,

---

[14] While an individual may decline sex offender treatment,
that decision would not render continued confinement a violation
of due process.  See Nieves, 446 Mass. at 593.

after an adversary hearing, that no conditions of release reasonably can assure the safety of the community or any person.

    d.   Jury verdict.  We also are asked to determine what proportion of the jury is required, at the petitioner's fourth trial, to return a verdict of "not sexually dangerous."  General Laws c. 123A, § 14(d), requires a unanimous jury verdict for a finding of sexual dangerousness and subsequent commitment to the treatment center.  General Laws c. 123A, § 9, provides that a person who has been held at the treatment center for at least one year may petition annually for release, and a verdict as to whether the individual remains sexually dangerous may be reached by a vote of ten out of twelve jurors.  See Sheridan, petitioner, 422 Mass. at 780-781.  In this case, the Superior Court judge determined that the SDP statute permits the Commonwealth's petition to be dismissed if ten out of twelve jurors conclude that the petitioner is not sexually dangerous, because, had the jury found him sexually dangerous at his first trial, by now he would have spent at least one year at the treatment center, and could have filed a petition for release under G. L. c. 123A, § 9.  Equality and fairness therefore require, according to the judge, an asymmetrical jury verdict instruction in this case.

    We are mindful that G. L. c. 123A, § 14 (d), explicitly refers to the requirement of a unanimous jury verdict for a

finding of sexual dangerousness, and is silent as to the proportion necessary to reach the contrary conclusion. Common and statutory law consistently have provided, however, that the same proportion of jurors is required in order to reach a finding for either party in a civil case, and of guilt or innocence in a criminal case. See, e.g., 3 W. Blackstone, Commentaries *375 (unanimous jury required for verdict in civil trial); 4 W. Blackstone, Commentaries *354 (jury must deliver criminal verdict in same form). See also Blueford, 566 U.S. at 608, quoting Allen v. United States, 164 U.S. 492, 501 (1896) (goal of jury system is to secure unanimity); Commonwealth v. Zekirias, 443 Mass. 27, 33 (2004) (only unanimous jury verdict is valid); Mass. R. Crim. P. 27 (a), 378 Mass. 897 (1979) (jury verdict must be unanimous); Mass. R. Civ. P. 48, 450 Mass. 1404 (2008) (parties may stipulate that finding by stated majority of jurors be accepted as verdict). Indeed, we are unaware of any scenario in which an asymmetrical requirement has been allowed or imposed.

An individual who petitions for release under G. L. c. 123A, § 9, unlike a person tried under G. L. c. 123A, § 14, has had access to at least one year of sex offender treatment. "Commitment to the treatment center and the treatment an SDP receives there is intended to provide an SDP with an opportunity to overcome his 'general lack of power to control his sexual

impulses' so that he can successfully reenter society." Hill, petitioner, 422 Mass. 147, 154, cert. denied, 519 U.S. 867 (1996). Because the differential treatment of those confined under G. L. c. 123A, § 14, and G. L. c. 123A, § 9, is "rationally based" on this treatment opportunity, it raises no equal protection concern. See Vacco v. Quill, 521 U.S. 793, 801 (1997), quoting Personnel Admin'r of Mass. v. Feeney, 442 U.S. 256, 272 (1979).

"We shall not override the legislative mandate without a compelling constitutional basis." Sheridan, petitioner, 422 Mass. at 780. The Legislature chose to require a less than unanimous jury verdict in G. L. c. 123A, § 9, and not in G. L. c. 123A, § 14. "The omission of particular language from a statute is deemed deliberate where the Legislature included such omitted language in related or similar statutes." Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 129 (2014). See Commonwealth v. Gagnon, 439 Mass. 826, 833 (2003) ("where the legislature has carefully employed term in one place and excluded it in another, it would not be implied where excluded" [citation omitted]).

We read statutory provisions in light of the common law and existing statutes. Liability Investigative Fund Effort v. Medical Malpractice Joint Underwriting Ass'n of Mass., 409 Mass. 734, 742 (1991), S.C., 418 Mass. 436, cert. denied, 513 U.S.

1058 (1994), quoting <u>Pereira</u> v. <u>New England LNG Co</u>., 364 Mass. 109, 115 (1973). "Statutes are to be construed in the light of the preexisting common and statutory law . . . . It is not to be lightly supposed that radical changes in the law were intended where not plainly expressed." <u>Greater Boston Real Estate Bd</u>., 438 Mass. at 202, quoting <u>Ferullo's Case</u>, 331 Mass. 635, 637 (1954). In the absence of clear legislative intent, the SDP statute cannot be read to permit an asymmetrical jury verdict at the petitioner's fourth trial.

3. <u>Conclusion</u>. We answer the reported questions as follows:

1. The petitioner may be retried for a fourth time on the Commonwealth's petition to commit him as a sexually dangerous person under G. L. c. 123A, § 12.

2. Due process requires that the petitioner be afforded a hearing and the opportunity for release with conditions pending his fourth trial.

3. The Superior Court judge has the authority, and the obligation, to conduct a hearing to determine, by clear and convincing evidence, whether there are conditions under which the petitioner may be released pending his retrial. The petitioner must be released unless the Superior Court judge determines, by clear and convincing evidence, that no conditions can reasonably ensure public safety.

4. To reach a determination that an individual is "not sexually dangerous" at a trial under G. L. c. 123A, § 14, a unanimous jury verdict is required.

5. After a mistrial at a G. L. c. 123A, § 14 (a) trial, a Superior Court judge may impose bail, electronic monitoring, or other conditions of release, as the judge deems appropriate, consistent with public safety.

<u>So ordered</u>.