NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-76

PHILIP BUNTING, petitioner.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial on his G. L. c. 123A, § 9 (§ 9) petition for release, the petitioner, Philip Bunting, appeals from a non-unanimous jury verdict finding that he remained a sexually dangerous person (SDP). His sole argument on appeal is that the nonunanimous verdict violated his right to due process under the Fourteenth Amendment to the United States Constitution. We affirm.

Background. In 2009, the petitioner was adjudicated an SDP and civilly committed to the Massachusetts Treatment Center. Nine years later, in November 2018, he filed a petition for release under G. L. c. 123A, § 9, and a trial on the matter commenced in July 2022 in the Superior Court with a fifteen-member jury.

The evidence at trial showed that the petitioner had, by his own admission, engaged in at least eight acts of sexual misconduct against both adult and child victims. Four of those

incidents resulted in convictions for indecent assault and battery -- one against a child under fourteen and three against persons aged fourteen years or older. In the opinion of the Community Access Board members and one qualified examiner, the petitioner continued to suffer from at least one mental abnormality or personality disorder that rendered him likely to reoffend if he were to be released into the community. One qualified examiner and two expert witnesses for the petitioner testified that, in their opinion, he was no longer sexually dangerous.

At the conclusion of trial, the parties agreed that all fifteen jurors could deliberate. The jury were instructed, as per the petitioner's proposed instructions, that "[t]he decision you reach in [the] jury room concerning whether or not [the petitioner] is [a] sexually dangerous person or not sexually dangerous person need not be unanimous," so long as five-sixths, or thirteen out of fifteen, jurors agreed. Ultimately, the jury returned a non-unanimous verdict, with thirteen jurors finding that the petitioner remained sexually dangerous and two jurors finding that he was no longer so.

Discussion. On appeal, the petitioner claims that it is a violation of his right to due process under the Fourteenth Amendment to allow a jury to return a non-unanimous verdict in a § 9 case. As previously mentioned, the petitioner argued the

2

opposite in the trial court; thus, the issue is waived, and we review only to determine whether any error created a substantial risk of a miscarriage of justice. R.B., petitioner, 479 Mass. 712, 718 (2018).

When the Commonwealth initially seeks to civilly commit someone as an SDP, it must follow the procedures outlined in G. L. c. 123A, § 14, which requires a jury (when one is demanded), in order to adjudicate the person an SDP, to find "unanimously and beyond a reasonable doubt" that the Commonwealth has met its burden. G. L. c. 123A, § 14 (d). After an initial adjudication, petitions for release are governed by § 9 of the same chapter, which provides only that "[i]f a jury trial is demanded, the matter shall proceed according to the practice of trial in civil cases in the superior court." Case law confirms that in § 9 petitions, as in any other civil action governed by G. L. c. 234A, § 68B, only five-sixths of the jury must agree in order to return a verdict. See Sheridan, petitioner, 422 Mass. 776, 777 (1996) (discussing predecessor statute, G. L. c. 234, § 34A).

In deciding that the five-sixths requirement applies to § 9 petitions, the Supreme Judicial Court, using the due process framework provided in Mathews v. Eldridge, 424 U.S. 319 (1976), directly considered whether a unanimous jury verdict was necessary to protect petitioners' fundamental liberty interest

3

and concluded that unanimity was not required.  See Sheridan, 422 Mass. at 777-780.  Indeed, the court has repeatedly held that neither the Federal nor the State constitution affords petitioners a right to trial by jury at all in G. L. c. 123A proceedings; it is only the statute itself which provides and defines the right.  See Commonwealth v. Barboza, 387 Mass. 105, 113, cert. denied, 459 U.S. 1020 (1982).  See also LeSage, petitioner, 488 Mass. 175, 184 (2021); Gagnon, petitioner, 416 Mass. 775, 778 (1994).  Cf. Commonwealth v. G.F., 479 Mass. 180, 202 (2018), quoting Sheridan, supra at 780 (declining, in absence of "compelling constitutional basis," to override statutory scheme requiring unanimity under § 14 but not § 9).  Keeping in mind these precedents, and that "we have no power to alter, overrule or decline to follow the holding of cases the Supreme Judicial Court has decided," we reject the petitioner's arguments.  Ready, petitioner, 63 Mass. App. Ct. 171, 180 (2005), quoting Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485 (2003).

1.  Right to a unanimous jury verdict.  The petitioner's first argument is that the Supreme Court's decision in Ramos v. Louisiana, 140 S. Ct. 1390 (2020), gives him a substantive right to a unanimous jury, and that § 9's non-unanimous jury provision infringes on that right.  We are unpersuaded.  Ramos established that the Sixth Amendment, as incorporated in and applicable to

4

the States under the Fourteenth Amendment, requires a unanimous verdict to support a conviction of a serious criminal offense in State court, as it does in Federal court. Id. at 1397. However, the Sixth Amendment right to a trial by jury does not extend to SDP proceedings under c. 123A, which are civil in nature. See Barboza, 387 Mass. at 112. Thus, the holding in Ramos has no direct bearing on whether civil commitment proceedings must be decided by a unanimous jury. See Interest of T.B., 641 S.W.3d 535, 539 (Tex. App. 2022) ("Ramos is limited to verdicts in criminal cases, and we decline to extend its holding to civil commitment proceedings").

Nevertheless, the petitioner attempts to reframe Ramos as holding that jury unanimity, like the right to notice and an opportunity to be heard by an impartial tribunal, is now an element of procedural due process that must be met when the stakes are sufficiently serious, regardless of the context in which the case arises. Given that Ramos specifically bases its holding on the language of the Sixth Amendment, which guarantees a "trial by an impartial jury" during criminal proceedings, see Ramos, 140 S. Ct. at 1396, we see no support for the petitioner's expansive reading and decline to extend Ramos beyond the Sixth Amendment criminal context. See generally Kansas v. Hendricks, 521 U.S. 346, 370 (1997) (explaining that

5

civil commitment proceedings do not trigger constitutional protections that pertain exclusively to penal statutes).

2. <u>Substantive due process</u>.  Next, the petitioner claims that, because the jury verdict provided for in § 9 ultimately infringes on his fundamental liberty interest in freedom from physical restraint, the non-unanimity requirement should be subject to strict scrutiny.  Yet the petitioner fails to explain how the five-sixths provision works any such infringement.

Certainly, the petitioner's continued civil commitment is an infringement upon his liberty interest that must be adequately justified and narrowly tailored, see <u>LeSage</u>, 488 Mass. at 181, but the particular verdict provision that the petitioner challenges is just as likely to result in his release as his continued confinement.  In <u>G.F</u>., 479 Mass. at 201-202, the court confirmed that the verdict provisions under c. 123A are symmetrical; thus, although the Commonwealth must obtain only five-sixths of the jurors' votes to continue an SDP's commitment, the same is true for an SDP's bid to be released. Importantly, § 9 hearings are not zero-sum proceedings in which the Commonwealth's failure to obtain a verdict in its favor automatically results in a petitioner's release.  See, e.g., <u>LeSage</u>, <u>supra</u> at 177 (hung jury during § 9 proceeding resulted in mistrial).  Rather, to be released, a petitioner must obtain a verdict in his favor.  Allowing five-sixths of the jury to

6

return a verdict thus may work to a petitioner's benefit as well as his detriment. For example, the defendant in G.F. sought to have the five-sixths provision of § 9 apply at his § 14 hearing after several mistrials because it would have been easier to obtain a verdict in his favor if unanimity were not required. See G.F., supra at 188. In sum, the five-sixths provision for obtaining a verdict under § 9, as compared to § 14, advantages and disadvantages both parties equally, and the provision does not, in and of itself, infringe on the petitioner's liberty interest.

3. Arbitrariness. Finally, the petitioner asserts that, even if strict scrutiny is not warranted, the statute is still unconstitutional because the Commonwealth cannot demonstrate that the five-sixths provision of § 9 is not arbitrary. However, this question was effectively resolved in G.F., where the court concluded that the five-sixths provision in § 9 is rationally based on the fact that "[a]n individual who petitions for release under [§ 9], unlike a person tried under [§ 14], has had access to at least one year of sex offender treatment," and therefore is potentially more prepared to reenter society. G.F., 479 Mass. at 202. If the distinction between § 9 and § 14 has a rational basis, it cannot be arbitrary. See, e.g., Goodridge v. Department of Pub. Health, 440 Mass. 309, 329-330 (2003) (due process requirement that state action have rational

7

basis and not be arbitrary); id. at 331 (referring to "rational basis test for . . . due process").  Thus, we conclude that the agreement of only five-sixths of the jurors is constitutionally sufficient to render a verdict in § 9 cases.

The petitioner also argues that the five-sixths provision is invalid because "the way the law assesses whether the Commonwealth met its burden is to have a verdict rendered by a unanimous jury."  This assertion simply assumes the desired conclusion, that the Commonwealth's burden is not only to prove beyond a reasonable doubt that the petitioner remains an SDP but also to prove it to every juror.  Yet § 9, as interpreted in Sheridan, does not require such unanimity, and neither the Sixth Amendment nor the Fourteenth Amendment's due process clause invalidates that aspect of § 9.  See Sheridan, 422 Mass. at 780.  In short, although the petitioner asserts that "the law" requires a unanimous jury in § 9 proceedings, he has not

identified any statute, constitutional provision, or other source of law that creates such a requirement.

Judgment affirmed.

By the Court (Sacks, Singh & Walsh, JJ.[1]),

Assistant Clerk

Entered:   April 10, 2024.

---

[1] The panelists are listed in order of seniority.